905 So.2d 760 (2004)
Patricia (McClendon) KALMAN, Appellant,
v.
Zoltan KALMAN, Appellee.
No. 2003-CA-01024-COA.
Court of Appeals of Mississippi.
November 30, 2004.
*761 Gregory Livingston Harper, Jackson, attorney for appellant.
W. Terrell Stubbs, Mendenhall, attorney for appellee.
Before LEE, P.J., IRVING and GRIFFIS, JJ.
LEE, P.J., for the Court.

FACTS AND PROCEDURAL HISTORY
¶ 1. Patricia and Zoltan Kalman were married on September 11, 1990. Prior to this union, the couple parented three children: Jennifer, born in 1982, and Paul and Hilary, who were born in 1985. Immediately after the September marriage, Patricia and the three children left Zoltan in Ohio and joined Patricia's parents in Mississippi. Patricia continues to live in Mississippi with the children while Zoltan remains in Ohio. On September 6, 1997, Zoltan won $2,600,000 in the Ohio state lottery. On October 24, 1997, Zoltan and Patricia filed a joint complaint for divorce, and the divorce was granted on January 20, 1998. Zoltan never disclosed his winnings to the court, and he never disclosed his winnings to Patricia. Patricia did not learn of Zoltan's good fortune until 2000, when one of Zoltan's former paramours called Patricia and told her that Zoltan had won. Upon discovering this information, Patricia filed a motion to modify the final judgment of divorce and for contempt on April 11, 2001. An agreed temporary restraining order prohibiting *762 Zoltan from encumbering the lottery winnings was entered on April 15, 2002. On April 14, 2003, the Simpson County Chancery Court ordered Zoltan to pay child support in the amount of $917 per month, half of the children's medical and college expenses, and $31,000 in past-due child support. Patricia's motions for contempt and alimony were denied. It is from this denial that Patricia now appeals, arguing the following three assignments of error: (1) the trial court erred in determining that the lottery proceeds were not marital property, and therefore not subject to equitable distribution; (2) the trial court erred in not considering the inequitable division of marital property in determining alimony; and (3) the trial court erred in failing to find Zoltan in contempt for his failure to disclose his lottery winnings.

STANDARD OF REVIEW
¶ 2. This Court employs a limited standard of review when reviewing a chancellor's decision. Miss. Dep't Human Servs. v. Shelby, 802 So.2d 89, 92(¶ 11) (Miss.2001). We will not disturb a chancellor's award of alimony and division of marital assets unless the court was manifestly wrong, abused its discretion or applied an erroneous legal standard. Sandlin v. Sandlin, 699 So.2d 1198, 1203 (Miss. 1997). "The word `manifest,' as defined in this context, means `unmistakable, clear, plain, or indisputable.'" Mosley v. Atterberry, 819 So.2d 1268, 1272(¶ 16) (Miss. 2002) (quoting Mosley v. Mosley, 784 So.2d 901(¶ 7) (Miss.2001) (internal citations omitted)).
¶ 3. This standard of review holds true for contempt matters, too. "[C]ontempt matters are committed to the substantial discretion of the trial court which, by institutional circumstance and both temporal and visual proximity, is infinitely more competent to decide the matter than we are." Morreale v. Morreale, 646 So.2d 1264, 1267 (Miss.1994); Cumberland v. Cumberland, 564 So.2d 839, 845 (Miss. 1990). A citation for contempt is determined upon the facts of each case and is a matter for the trier of fact. Milam v. Milam, 509 So.2d 864, 866 (Miss.1987). It is committed to the sound discretion of the trial court, and this Court will not reverse where the chancellor's findings are supported by substantial credible evidence. Ligon v. Ligon, 743 So.2d 404(¶ 5) (Miss. Ct.App.1999).

I. DID THE CHANCELLOR ERR IN DETERMINING THAT THE LOTTERY PROCEEDS WERE NOT MARITAL PROPERTY?

II. DID THE CHANCELLOR ERR IN ITS DETERMINATION OF ALIMONY?
¶ 4. Because of the interrelationship between alimony and marital property, on this occasion this Court will address these two assignments of error simultaneously.
¶ 5. In the area of domestic relations, the division of marital assets is governed under the law as stated in Hemsley v. Hemsley, 639 So.2d 909 (Miss.1994) and Ferguson v. Ferguson, 639 So.2d 921 (Miss.1994). Tynes v. Tynes, 860 So.2d 325, 327-28(¶ 6) (Miss.Ct.App.2003). First, the parties' assets must be determined to be either marital or nonmarital pursuant to Hemsley. Hemsley regards marital property as "any and all property acquired or accumulated during the marriage." Hemsley, 639 So.2d at 915. Furthermore, under Hemsley, assets acquired or accumulated during the course of the marriage are marital assets and are subject to an equitable distribution by the chancellor. Id.
*763 ¶ 6. The marital property is then equitably divided, employing the Ferguson factors as guidelines, in light of each parties' nonmarital property. Tynes, 860 So.2d at 328(¶ 6). The Court in Ferguson outlined the following factors for a chancellor to consider in dividing martial property:
1. Substantial contribution to the accumulation of the property. Factors to be considered in determining contribution are as follows:
a. Direct or indirect economic contribution to the acquisition of the property;
b. Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties and duration of the marriage; and
c. Contribution to the education, training or other accomplishment bearing on the earning power of the spouse accumulating the assets.
2. The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise.
3. The market value and the emotional value of the assets subject to distribution.
4. The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse;
5. Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;
6. The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;
7. The needs of the parties for financial security with due regard to the combination of assets, income and earning capacity; and,
8. Any other factor which in equity should be considered.
Ferguson, 639 So.2d at 928.
¶ 7. In the case sub judice, the chancellor did not address whether the proceeds of the lottery were, in fact, marital property under Hemsley. Instead, in his order the chancellor merely concluded that "alimony is not allowable and that portion of the [m]otion is hereby dismissed with prejudice."
¶ 8. At the motion hearing Patricia testified that while they were married, Zoltan would summer with the family in Mississippi. Patricia also testified that Zoltan would occasionally fly the children to Ohio. Patricia further testified that Zoltan did, however infrequently and penuriously, send her money during the marriage. Although Patricia and Zoltan lived at different locations, Patricia arguably tended to the needs of the family in rearing the children. Notably, had the chancellor determined that the lottery winnings were marital property under Hemsley, Patricia has a colorable argument entitling her to equitable distribution of the winnings under the Ferguson factors. Because the chancellor did not utilize either Hemsley or Ferguson in determining Patricia's entitlement to part of the Zoltan's winnings, this Court must reverse the judgment of the trial court and remand this cause for a determination under the applicable case law as to whether the lottery ticket, which was acquired during the marriage, constitutes marital property under Hemsley and is therefore subject to equitable distribution. This Court further instructs the trial court to consider the Ferguson factors in *764 dividing the lottery winnings should the chancellor conclude that the winnings are, in fact, marital property.

III. DID THE CHANCELLOR ERR IN NOT FINDING ZOLTAN IN CONTEMPT FOR FAILING TO DISCLOSE HIS LOTTERY WINNINGS?
¶ 9. A citation for contempt is determined upon the facts of each case and is a matter for the trier of fact. Milam v. Milam, 509 So.2d 864, 866 (Miss.1987). It is committed to the sound discretion of the trial court, and this Court will not reverse where the chancellor's findings are supported by substantial credible evidence. Ligon v. Ligon, 743 So.2d 404(¶ 5) (Miss. Ct.App.1999).
¶ 10. In his judgment addressing Patricia's motion for contempt and motion to modify the final judgment of divorce, the chancellor addressed the contempt issue by finding only that "the Respondent is not in contempt and therefore that portion of the [m]otion filed by Petitioner is hereby dismissed with prejudice." On appeal, Patricia urges this Court to find that Zoltan should be held in contempt for his failure to disclose his lottery winnings to the court. A citation for contempt is proper when "the contemnor has willfully and deliberately ignored the order of the court." Bredemeier v. Jackson, 689 So.2d 770, 777 (Miss.1997).
¶ 11. Although neither Patricia nor Zoltan have urged this Court to consider the contempt issue under Uniform Chancery Court Rule 8.05, this Court feels that a review of both parties' obligations to the court is appropriate. Uniform Chancery Court Rule 8.05 requires a detailed and truthful disclosure of both parties' finances. Under the plain language of this rule, the 8.05 disclosure is mandatory unless "excused by Order of the Court for good cause." The rule dictates that "each party in every domestic case involving economic issues and/or property division shall provide the opposite party or counsel, if known [enumerated financial disclosures.]" This rule provides that "[t]he failure to observe this rule, without just cause, shall constitute contempt of Court for which the Court shall impose appropriate sanctions and penalties." Neither Zoltan nor Patricia complied with this rule.
¶ 12. Zoltan seeks to persuade this Court that he should not be found in contempt because he "never appeared in [c]ourt nor was he ever ordered by the [c]ourt to produce any financial information." Zoltan's argument effectively attempts to justify perpetuating a fraud on the court by failing to disclose accurate financial information. The fact that Zoltan elected not to secure representation in the divorce is of little import, for rule 8.05 does not except pro se litigants from compliance. Likewise, Patricia failed to file a disclosure under rule 8.05 as well. Although this Court is aware that chancellors commonly do not require these disclosures, the rule serves the specific purpose of providing the court with accurate information to assist in its disposition of litigation.
¶ 13. Accordingly, we reverse the chancellor's contempt determination and remand this issue for determination in light of rule 8.05.
¶ 14. THE JUDGMENT OF THE CHANCERY COURT OF SIMPSON COUNTY IS REVERSED AND REMANDED FOR A DETERMINATION CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
KING, C.J., BRIDGES, P.J., IRVING, MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.