977 So.2d 412 (2008)
In the Matter of the DISSOLUTION OF the MARRIAGE OF Robert D. DE ST. GERMAIN and Brenda L. De St. Germain.
Brenda L. De St. Germain, Appellant
v.
Robert D. De St. Germain, Appellee.
No. 2006-CA-01480-COA.
Court of Appeals of Mississippi.
March 18, 2008.
*414 Renee M. Porter, attorney for appellant.
Robert E. Evans, Monticello, attorney for appellee.
Before KING, C.J., ROBERTS and CARLTON, JJ.
ROBERTS, J., for the Court.

SUMMARY OF THE CASE
¶ 1. This is an appeal of an unsuccessful motion to set aside a divorce or, alternatively, for equitable distribution of marital property. Robert and Brenda de St. Germain filed a joint bill for divorce. Approximately three months later, they executed a property settlement agreement. According to that agreement, Robert was to receive all real property except for a convenience store. Additionally, Robert was to *415 receive custody of their son, while Brenda was to pay Robert child support.
¶ 2. The Lawrence County Chancery Court later entered a final decree of divorce. Simultaneously, Robert and Brenda executed an amended property settlement agreement. According to the amended agreement, Robert received the convenience store, as well as all the other real property. All other provisions of the original property settlement agreement remained the same.
¶ 3. Despite the divorce decree, Robert and Brenda continued to live together until September 2004. When they finally separated, Brenda filed a motion to set aside the divorce or, in the alternative, for equitable distribution of the marital property. The matter was set for hearing, but on the scheduled hearing date, the chancellor dismissed Brenda's motion without conducting a hearing. After an unsuccessful motion for reconsideration, Brenda appeals and claims the chancellor erred by: (1) failing to find the property settlement agreement adequate and sufficient, (2) failing to require Rule 8.05 declarations, (3) failing to find that Robert engaged in overreaching, and (4) failing to equitably distribute the marital property. Finding no error, we affirm.

FACTS AND PROCEDURAL HISTORY
¶ 4. Robert and Brenda were married on August 11, 1984. Approximately fifteen years later, they filed a "joint bill for divorce" in the Lawrence County Chancery Court. On September 8, 1999, they executed and filed a "property and separation agreement," which was prepared by Robert's attorney. Brenda was not represented by counsel. According to that agreement, Brenda received the convenience store, while Robert received all other real property. Robert also received custody of their son, and Brenda agreed to pay Robert child support.
¶ 5. On November 18, 1999, the chancellor entered a final decree of divorce. That same day, Robert and Brenda executed an "amended property and separation agreement." The only difference between the original agreement and the amended agreement was that Brenda no longer received the convenience store. Instead, Robert received it.
¶ 6. According to Brenda, she and Robert continued to live together after the chancellor entered the divorce decree. Robert disputes that. According to Robert, Brenda was merely a frequent visitor. Brenda submits that, when they finally separated, Robert sought to enforce the amended property settlement agreement. In any event, on September 17, 2004, Brenda filed a motion to set aside the divorce or, alternatively, for equitable distribution of the marital property.[1] Robert responded with a motion to dismiss. The chancellor granted Robert's motion to dismiss and found that Brenda's motion was untimely. After an unsuccessful motion for reconsideration, Brenda appeals.

STANDARD OF REVIEW
¶ 7. "This Court's scope of review in domestic relations matters is limited." Perkins v. Perkins, 787 So.2d 1256, 1260(¶ 9) (Miss.2001) (citations omitted). We will not disturb a chancellor's factual findings unless the chancellor was "manifestly wrong, clearly erroneous or an erroneous legal standard was applied." Id. at 1260-61(¶ 9). However, Brenda specifically appeals the chancellor's decision to overrule her motion to set aside the divorce. *416 By filing a motion to set aside the divorce, Brenda invoked Mississippi Rule of Civil Procedure 60(b). "Our standard of review when evaluating the denial of a Miss. R. Civ. P. 60 motion is abuse of discretion." Id. at 1261(¶ 9). "Review of a denial of a Rule 60(b) motion considers only whether a judge abused the broad discretion granted by that rule which provides for extraordinary relief granted only upon an adequate showing of exceptional circumstances, and neither ignorance nor carelessness on the part of an attorney will provide grounds for relief." Id. "A party is not entitled to relief merely because he is unhappy with the judgment, but he must make some showing that he was justified in failing to avoid mistake or inadvertence; gross negligence, ignorance of the rules, or ignorance of the law is not enough." Id. Additionally, Brenda sought alternative relief through a motion for new trial pursuant to Mississippi Rule of Civil Procedure 59. "An appeal from a denial of a Rule 59 motion may address the merits of the entire underlying proceeding, and review of a trial judge's denial of a Rule 59 motion is limited to abuse of discretion." Id.

ANALYSIS
I. WHETHER BRENDA'S MOTION TO SET ASIDE THE DIVORCE WAS TIMELY.
¶ 8. Brenda does not once address the chancellor's decision to grant Robert's motion to dismiss. Instead, she bases her argument on the premise that the chancellor erred when he declined to grant her motion to set aside the divorce. Be that as it may, Robert submits that the chancellor correctly dismissed Brenda's motion. We agree.
¶ 9. Within her motion to set aside the divorce, Brenda did not state the specific basis for her motion. Viewed in its context, Brenda's motion could have been based on Mississippi Rule of Civil Procedure 60(b)(1)  "fraud, misrepresentation, or other misconduct of an adverse party." To the extent that Brenda's motion was based on Rule 60(b)(1), it was clearly untimely. One who proceeds under Rule 60(b)(1) must file the motion within six months after the underlying judgment was entered. M.R.C.P. 60(b).
¶ 10. Additionally, Brenda's motion could have been based on Mississippi Rule of Civil Procedure 60(b)(5) ("it is no longer equitable that the judgment should have prospective application") or the catch-all provision under Mississippi Rule of Civil Procedure 60(b)(6) ("any other reason justifying relief from the judgment"). One who proceeds under either Rules 60(b)(5) or 60(b)(6) must do so "within a reasonable time." M.R.C.P. 60(b). The chancellor did not specifically state that Brenda failed to file her motion "within a reasonable time," but his ruling implies as much. We cannot find that the chancellor abused his discretion. Brenda filed her motion approximately five years after the chancellor entered the divorce judgment. The allegations raised within Brenda's motion could have been submitted much earlier than five years after the judgment of divorce. Accordingly, we affirm the chancellor's decision to grant Robert's motion to dismiss.
¶ 11. Though any remaining issues are rendered moot as a result, for the sake of discussion, we will consider Brenda's other issues raised on appeal.
II. WHETHER THE CHANCELLOR ERRED WHEN HE OVERRULED BRENDA'S MOTION TO SET ASIDE THE DIVORCE BECAUSE THE CHANCELLOR NEVER FOUND THE PROPERTY SETTLEMENT AGREEMENT "ADEQUATE AND SUFFICIENT."
¶ 12. The chancellor never specifically stated that either the initial or *417 amended property settlement agreement was "adequate and sufficient." Brenda claims that, by failing to find either agreement "adequate and sufficient," the chancellor committed reversible error. Brenda suggests that this Court must find the property settlement agreement unenforceable, and remand the case to the chancery court for an equitable distribution of marital property. We disagree.
¶ 13. Mississippi Code Annotated section 93-5-2(2) (Rev.2005) provides as follows:
If the parties provide by written agreement for the custody and maintenance of any children of that marriage and for the settlement of any property rights between the parties and the court finds that such provisions are adequate and sufficient, the agreement may be incorporated in the judgment, and such judgment may be modified as other judgments for divorce.
In Perkins, 787 So.2d at 1265-66, the Mississippi Supreme Court reversed a chancellor's decision to deny a motion to set aside a divorce and property settlement agreement because the chancellor did not find the agreement "adequate and sufficient." To be precise, Perkins held:
Although today this Court does not direct that the chancellor in this case must make on-the-record findings of fact and conclusions of law regarding the equity of the distribution of the marital estate in irreconcilable differences divorces where the parties have presented a written property settlement agreement, we nevertheless remind all chancellors that the principles of equitable distribution apply in all divorce cases, whether based on fault grounds or irreconcilable differences. The statutory requirement of Section 93-5-2 that the "court finds such provisions adequate and sufficient" clearly anticipates more than just a mere recitation of the obligatory words of the statute. In the present case, the record before us presents a very one-sided agreement, which on its face appears inequitable.
Id. at 1265 n. 4 (internal citations omitted).
¶ 14. Applying the supreme court's holding in Perkins, we decline to find that, for a lack of the specific words "adequate and sufficient," the chancellor committed reversible error. The supreme court held that section 93-5-2 "anticipates more than just a mere recitation of the obligatory words of the statute." Logic and reason dictate that a lack of "a mere recitation of the obligatory words" is not outcome determinative or fatal to the property settlement agreement at issue.[2] As the supreme court did in Perkins, it is necessary to view the actual agreement and the provisions it contains to determine whether the agreement is adequate and sufficient in terms of equity and entirety. Brenda raises that precise question in her issue IV. Because we examine it there, we find no need to repeat it here.
III. WHETHER THE CHANCELLOR ERRED WHEN HE GRANTED THE DIVORCE WITHOUT REQUIRING 8.05 FINANCIAL DECLARATIONS.
¶ 15. Brenda claims that the chancellor erred when he failed to require the Uniform Chancery Court Rule 8.05 financial disclosures before he granted their divorce. According to Brenda, the appropriate remedy is to reverse and remand for an equitable distribution. Predictably, Robert disagrees.
¶ 16. Rule 8.05 provides that each party must submit a financial declaration "unless *418 excused by order for good cause shown." Rule 8.05 also provides that "the failure to observe this rule, without just cause, shall constitute contempt of Court for which the Court shall impose appropriate sanctions and penalties." Failure to require Rule 8.05 declarations does not require that this Court set aside a divorce judgment for a subsequent equitable distribution. Even so, such a remedy would not be unprecedented.
¶ 17. Brenda relies on Kalman v. Kalman, 905 So.2d 760 (Miss.Ct.App.2004). In Kalman, both a husband and a wife failed to submit Rule 8.05 financial disclosures. Id. at 764(¶ 11). The husband also concealed $2.6 million in lottery winnings that were not made part of the chancellor's equitable distribution. Id. at 761(¶ 1). The wife filed an unsuccessful motion for contempt. Id. at 762(¶ 1). On appeal, this Court reversed "the chancellor's contempt determination and remand[ed] . . . for determination in light of rule 8.05." Id. at 764(¶ 13). Kalman does not support Brenda's contention that we must reverse and remand for an equitable distribution. Kalman involved a review of a motion for contempt and the concealment of $2.6 million in assets. Id. at 762-64 (¶¶ 4-13). Brenda has not alleged any such concealment. We find this assignment of error to be without merit.
IV. WHETHER THE CHANCELLOR ERRED WHEN HE DID NOT FIND THAT ROBERT ENGAGED IN OVERREACHING.
¶ 18. According to Brenda, the chancellor should have set aside the amended property settlement agreement based on the proposition that Robert engaged in overreaching. Brenda cites Lowrey v. Lowrey, 919 So.2d 1112 (Miss.Ct. App.2005) and submits that Robert engaged in overreaching because: (a) she did not have an attorney, (b) she was not competent to consent to the agreement because she was under a doctor's care for some unspecified and undocumented "mental problems," and (c) Robert had her sign the agreements before or at the time of the divorce and did not enforce them until five years later. According to Brenda, the property settlement agreement is "obviously" unfair and one-sided.
¶ 19. First and foremost, Brenda never once raised these allegations before the chancellor. Fundamental to appellate review is that we will not find that a trial judge erred in failing to decide a matter that was never presented to him or her. Birrages v. Ill. Cent. R.R., 950 So.2d 188, 194(¶ 18) (Miss.Ct.App.2006). Therefore, this matter is procedurally barred. Procedural bar notwithstanding, we still find no merit to Brenda's assertions.
¶ 20. Property settlement agreements are "no different from any other contract, and the mere fact that it is between a divorcing husband and wife, and incorporated into a divorce decree, does not change its character." Lowrey, 919 So.2d at 1120(¶ 31) (citation omitted). The law favors the settlement of disputes by agreement of the parties. Id. at (¶ 30). Ordinarily, we will enforce such agreements absent any fraud, mistake, or overreaching. Id. "This is as true of agreements made in the process of the termination of the marriage by divorce as of any other kind of negotiated settlement." Id. (quoting McManus v. Howard, 569 So.2d 1213, 1215 (Miss.1990)). "With regard to the property of the parties, this is a strong and enforceable rule with few, if any, exceptions." Id. "Mississippi law also distinguishes between provisions regarding property and financial matters and custody of minor children." Id. at (¶ 32). Brenda only alleges deficiencies in the division of marital property. *419 "In property and financial matters between the divorcing spouses themselves, there is no question that, absent fraud or overreaching, the parties should be allowed broad latitude." Id. (quoting Bell v. Bell, 572 So.2d 841, 844 (Miss.1990)).
¶ 21. There were multiple reasons for this Court's decision in Lowrey. Two reasons are entirely unrelated.[3] In Lowrey, this Court found that a chancellor was manifestly wrong when he applied an erroneous legal standard when he denied a motion for relief from judgment based on the concept that a demonstration of overreaching depended on a demonstration of fraud. Id. at 1118(¶ 21). There is no requirement that one must necessarily prove fraud to prove overreaching. Instead, an analysis of whether an agreement is the product of overreaching involves: (a) a determination that an agreement is so one-sided and unfair that it could never be considered "adequate and sufficient," and (b) a determination that an agreement resulted from an inequality of bargaining power or other circumstances such that there was no meaningful choice on the part of the disadvantaged party. Id. at 1121(¶ 35).
¶ 22. This Court found overreaching in Lowrey. To be specific, this Court found:
There is no doubt that the agreement is one-sided and unfair. Pursuant to the settlement agreement, Cynthia surrendered legal and physical custody of her children though she had been the children's primary caregiver up to that point. Additionally, Cynthia received little to no specified visitation rights with her children. Moreover, though she had no means of income, she agreed to purchase clothing for the girls, pay half the AT & T debt, all the credit card debt, and pay ten percent of her gross income as child support. Regarding marital property, Cynthia gave up all her marital property except personal items, while Perrin receive[d] the marital home, the equity in the marital home, full legal and physical custody of the children, his retirement funds, and nearly all of the marital property. The gross disparity in the settlement agreement indicates that the agreement is one-sided and unfair.
Still, did Cynthia demonstrate that the settlement agreement resulted from an inequality of bargaining power or other circumstances such that Cynthia had no meaningful choice whether to enter the settlement agreement? Cynthia claims that she was in a vulnerable position when she signed the agreement, so that she lacked bargaining power. Cynthia points to a lack of bargaining power because she had no attorney and no money to hire an attorney, while Perrin had an attorney. Cynthia also points out that Perrin once told her "you get you an attorney and we will see you in court. We will destroy you. You will never live in this town again and you will never ever see your children again." Cynthia claims that she signed such an inequitable agreement because of the persuasive effect of Perrin's threats to run her out of town and prohibit her from seeing her daughters. Also, when *420 Cynthia signed the settlement agreement, she was at [Perrin's brother's] law office, though [Perrin's brother] was not present when Cynthia signed the agreement. According to Cynthia, a "lady told her where to sign" but neither [Perrin's brother] nor anyone in his office advised her to get a lawyer or asked her if she had seen a lawyer. Cynthia was humiliated and subjected to public shame for her gambling addiction. Cynthia claims that, without counsel, she was completely vulnerable and in a state of duress.
Id. at 1121 (¶¶ 36-37).
¶ 23. Here, Robert received practically all of the marital property, but he also assumed all of the marital debt. Robert also points out that he sold the convenience store, received $55,000 in proceeds, and gave Brenda $33,000 of those proceeds. Most importantly, Brenda failed to demonstrate an inequality of bargaining power or other circumstances that would indicate she lacked a meaningful choice when she entered the agreements. As mentioned, the law favors the settlement of disputes by agreement, and people are free to enter into property settlement agreements  even unfavorable ones. We will not disturb such agreements simply because an agreement is not necessarily in one's best interest. More is required, and Brenda has failed to demonstrate it.
V. WHETHER THE CHANCELLOR ERRED WHEN HE OVERRULED BRENDA'S MOTION TO SET ASIDE BECAUSE ROBERT AND BRENDA LIVED TOGETHER AFTER THE DIVORCE AND, AFTER FIFTEEN YEARS OF MARRIAGE AND FIVE YEARS OF COHABITATION, BRENDA RECEIVED NO MARITAL PROPERTY AND ROBERT RECEIVED ALL THE MARITAL PROPERTY.
¶ 24. In Brenda's previous issues, we have reviewed the substance of Brenda's argument under this issue. Suffice it to say, we find no reversible error.
¶ 25. THE JUDGMENT OF THE LAWRENCE COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., CHANDLER, GRIFFIS, BARNES, ISHEE AND CARLTON, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY.
NOTES
[1] Robert remarried approximately one month after Brenda filed her motion to set aside the divorce.
[2] However, we encourage chancellors to make such findings, if appropriate.
[3] In Lowrey, this Court found that the settlement agreement at issue was inadequate and insufficient because it was not in the best interests of the minor children in that (a) the agreement provided no specific visitation period with their mother, formerly their primary caregiver, and (b) the agreement's child support provision was not sufficiently enforceable because it obligated the mother to purchase clothing "in the amount to which she can afford." Id. at 1120-21 (¶¶ 32-34). Here, Robert and Brenda had one child. At the time of the divorce judgment, that child was thirteen years old. By the time Brenda filed her motion to set aside the divorce, their child was eighteen.