GRIFFIS, P.J.,
 

 for the Court:
 

 ¶ 1. Samuel D. Jernigan sought to recover a parcel of real property that he had previously conveyed to his then wife, Mae Bell Jernigan, who had conveyed it to her daughter, Amy Young. Samuel attempted to have the chancery court set aside the judgment in his divorce from Mae Bell in an effort to reopen the property division. Samuel also attempted to set aside the two deeds of conveyance. The chancery court found that Amy was the rightful owner of the property and that summary judgment against Samuel was proper. We find no error and affirm.
 

 FACTS
 

 ¶ 2. Samuel owned a .38-acre tract of commercial real property located in Net-tleton, Mississippi. He had operated a car-repair shop on the premises for some time.
 

 ¶ 3. In 1997, Samuel married Mae Bell. Two years later, Samuel conveyed the property to Mae Bell by quitclaim deed.
 

 
 *235
 
 ¶ 4. At the summary-judgment hearing, Samuel’s attorney explained the reason for the conveyance. Samuel had hurt his back and could no longer work on cars. His shop had been shut down. Mae Bell had opened up a seamstress shop on the property. Samuel was to apply for social-security disability benefits. Samuel thought his chance for benefits would be improved if the property was not titled in his name. Mae Bell gave the same explanation in response to Samuel’s interrogatories.
 

 ¶ 5. Samuel claims that although the deed, on its face, transferred all of Samuel’s rights in the property, there was an agreement that Mae Bell would eventually deed the property back to him. There was no written evidence of such an agreement.
 

 ¶ 6. A year after Samuel had conveyed the property to Mae Bell, Mae Bell conveyed the property to Amy, her daughter from a previous relationship, by warranty deed. The record does not make it clear whether Samuel was aware of this conveyance at that time.
 

 ¶ 7. A year after Mae Bell had deeded the property to Amy, Samuel and Mae Bell decided to get a divorce. Neither of them hired a lawyer. Instead they used fill-in-the-blank forms. They filed a joint complaint for divorce on the ground of irreconcilable differences with an accompanying property-settlement agreement. The property-settlement agreement did not award either of them any property. In the blanks provided to list which spouse gets what property, the word “none” was written. Four months later, the chancellor entered a final decree of divorce that simply dissolved the marriage and incorporated the property-settlement agreement.
 

 ¶ 8. Four days after the divorce decree was entered, Samuel filed a “Withdrawal of Consent.” In the withdrawal of consent, Samuel stated that he no longer consented to an irreconcilable-differences divorce. Approximately one month later, Samuel filed a new complaint for divorce on the grounds of habitual cruel and inhuman treatment or, alternatively, irreconcilable differences.
 

 ¶ 9. In this complaint, Samuel asked the chancellor to award him the Nettleton property. Also, one month later, Samuel filed a complaint to set aside both the quitclaim deed to Mae Bell and the warranty deed to Amy. He also filed a motion to set aside the original divorce decree pursuant to Mississippi Rule of Civil Procedure 60(b). Shortly thereafter, Samuel filed a lis pendens notice on the Nettleton property. The chancellor consolidated all of these separate filings into one case.
 

 ¶ 10. The case made no progress for approximately seven years. In October 2009, Amy filed a motion for summary judgment. After a hearing, the chancellor granted summary judgment against Samuel on all of the above claims. It is from this judgment that Samuel appeals.
 

 ANALYSIS
 

 1. Claim to Reopen the Divorce
 

 ¶ 11. Samuel’s motion to set aside the original divorce decree, pursuant to Mississippi Rule of Civil Procedure 60(b), asked the chancellor to reopen the divorce judgment. Samuel wanted the chancellor to reconsider the property division and find the Nettleton property was marital property. Samuel wanted the chancellor to award him an equitable share of the property. The chancellor denied the motion.
 

 ¶ 12. This Court’s standard of review of the denial of a Rule 60 motion is abuse of discretion.
 
 In re Dissolution of Marriage of De St. Germain,
 
 977 So.2d 412, 416 (¶ 7) (Miss.Ct.App.2008). We turn to the merits of Samuel’s arguments.
 

 
 *236
 

 a. Did Samuel consent to an irreconcilable-differences divorce?
 

 ¶ 13. First, Samuel argues that an irreconcilable-differences divorce should not have been granted because he did not consent to it. Samuel claims that, although his “Withdrawal of Consent” was filed four days after the divorce decree was entered, he actually signed that document in his lawyer’s office on the day before the decree was entered. He claims that an “unexplainable delay” led to the untimely filing. He also claims that he communicated to Mae Bell that he had changed his mind and that she went forward anyway and presented a prepared divorce decree to the chancellor.
 

 ¶ 14. Both spouses must consent to an irreconcilable-differences divorce. Miss. Code Ann. § 93-5-2(5) (Supp.2010). However, this Court has stated: “[w]avering on whether a divorce should be entered may often occur and does not invalidate the divorce.... What is important is that agreement be validly expressed on the day that the chancellor is considering the issue.”
 
 Sanford v. Sanford,
 
 749 So.2d 353, 356 (¶ 11) (Miss.Ct.App.1999).
 

 ¶ 15. In
 
 Sanford,
 
 this Court granted the wife relief from her irreconcilable-differences divorce on the basis that she had not actually consented. The facts there are very different from this case. Ms. Sanford was unrepresented by counsel, and she had written numerous letters to the chancellor that unequivocally expressed her desire not to be divorced.
 
 Id.
 
 at 355 (¶ 5). Also, she had clearly misunderstood Mississippi law and thought that a divorce was unavoidable even if she- refused to consent.
 
 Id.
 
 at 356 (¶ 12). Further, the only time she expressed consent was at a hearing when she nodded her head.
 
 Id.
 
 at 360 (¶ 27). Under those circumstances, this Court found sufficient accident or mistake to grant relief from the judgment under Rule 60(b)(2).
 
 Id.
 
 at 360 (¶ 28).
 

 ¶ 16. Indeed, relief under Rule 60(b) requires a showing of “exceptional circumstances.”
 
 In re Dissolution of Marriage of De St. Germain,
 
 977 So.2d at 416 (¶7). Samuel has not carried that burden here. Instead, this case is more like
 
 Harvey v. Harvey,
 
 918 So.2d 837 (Miss.Ct.App.2005). In
 
 Harvey,
 
 this Court denied the husband relief from his irreconcilable-differences divorce.
 
 Id.
 
 at 839 (¶ 9). We reaffirmed that “[w]hat is important is that the agreement be validly expressed on the day that the chancellor is considering the issue.”
 
 Id.
 
 Here, on the day the chancellor entered the decree, the chancellor had no reason to believe that Samuel did not consent.
 

 ¶ 17. Accordingly, this issue is without merit.
 

 b. Was a hearing required before a judgment of divorce could be entered?
 

 ¶ 18. Next, Samuel argues that the chancellor erred when he entered the divorce decree without holding a hearing. Samuel points out that the statute states: “Complaints for divorce on the ground of irreconcilable differences must have been on file for sixty (60) days before being
 
 heard.”
 
 Miss.Code Ann. 93-5-2(4) (Supp. 2010) (emphasis added). Samuel, however, ignores the next sentence. It states that, when there are no disputed issues to be decided by the chancellor, a joint complaint for an irreconcilable-differences divorce “shall be taken as proved and a final judgment entered thereon, as in other cases and without proof or testimony!).]”
 
 Id.
 
 Indeed, “ ‘[t]he parties bargain on the premise that reaching an agreement will avoid the necessity of presenting proof at trial.’ ”
 
 Perkins v. Perkins,
 
 787 So.2d 1256, 1263 (¶ 21) (Miss.2001) (quoting
 
 Gri
 
 
 *237
 

 er v. Grier,
 
 616 So.2d 337, 340 (Miss.1993)). We can find no authority to support Samuel’s argument that a hearing was necessary before a judgment could be entered, and it appears he had the same difficulty.
 

 ¶ 19. Accordingly, this issue is without merit.
 

 c.
 
 Was the chancellor required to recite that he found the property-settlement agreement “adequate and sufficient?”
 

 ¶ 20. Third, Samuel argues that the chancellor erred when he incorporated Samuel and Mae Bell’s property-settlement agreement into the divorce decree without finding the agreement to be “adequate and sufficient” as required by the statute. The statute provides, “[i]f the parties provide by written agreement ... for the settlement of any property rights between the parties and the court finds that such provisions are adequate and sufficient, the agreement may be incorporated in the judgment[.]” Miss.Code Ann. § 93-5-2(2) (Supp.2010). Samuel is correct that the chancellor did not recite that he found the agreement “adequate and sufficient.” However, that is not a “magic phrase,” and the absence of it is not a ground for reversal.
 
 Cobb v. Cobb,
 
 29 So.3d 145, 149 (¶ 16) (Miss.Ct.App.2010).
 

 ¶ 21. Rather, this Court will reverse only if convinced that the “agreement is [injadequate and [injsufficient in terms of equity and entirety.”
 
 Id.
 
 Turning to that question, Samuel makes no argument that the agreement was actually inadequate and insufficient, aside from his central claim that he should get the Net-tleton property. As will be discussed below, that property belonged to Amy at the time of the divorce; therefore, it could not have been awarded to either spouse in the judgment of divorce.
 

 ¶ 22. Accordingly, this issue is without merit.
 

 d. Was it reversible error for the chancellor to fail to require Rule 8.05 statements?
 

 ¶ 23. Finally, Samuel argues the chancellor committed reversible error when he failed to require Samuel and Mae Bell to submit financial-disclosure statements pursuant to Uniform Chancery Court Rule 8.05. This rule provides, “[ujnless excused by Order of the Court for good cause shown, each party in every domestic case involving economic issues and/or property division shall provide the opposite party” certain financial information.
 
 Id.
 
 However, a chancellor’s failure to require such statements is not necessarily reversible error.
 
 In re Dissolution of Marriage of De St. Germain,
 
 977 So.2d at 417-18 (¶¶ 16-17). If the lack of disclosure allowed one spouse to conceal major assets, it could be reversible error.
 
 Id.
 
 (citing
 
 Kalman v. Kalman,
 
 905 So.2d 760, 764 (¶¶ 11-13) (Miss.Ct.App.2004)).
 

 ¶ 24. Samuel makes no argument that Mae Bell was allowed to conceal major assets. Indeed, Samuel’s argument is that the chancellor’s failure to insist on the financial statements must result in reversal and remand. That argument is contrary to the existing authority. Accordingly, this issue has no merit.
 

 ¶25. We find that the chancellor did not abuse his discretion when he denied Samuel’s Rule 60(b) motion for relief from the judgment of divorce.
 

 2. The Deeds
 

 ¶ 26. In his second attempt to regain the Nettleton property, Samuel makes a two-pronged attack on both the quitclaim deed to Mae Bell and the warranty deed to Amy. First, he argues that both conveyances are invalid because they were not supported by consideration. Second, he argues that he and Mae Bell had an enforceable oral agreement, whereby she
 
 *238
 
 would hold the property in trust and deed it back to him at a later date. That agreement, Samuel contends, precluded Mae Bell from deeding the property to Amy.
 

 ¶ 27. First, we consider his argument that the conveyances are invalid for lack of consideration. Samuel’s argument fails because Mississippi law recognizes inter vivos deeds of gift. In
 
 Holmes v. O’Bryant,
 
 741 So.2d 366, 370 (¶ 19) (Miss.Ct.App.1999), this Court stated:
 

 “[linter vivos deeds of gift are a perfectly respectable mode of conveyance.”
 
 Mullins v. Ratcliff,
 
 515 So.2d 1183, 1190 (Miss.1987). “A man of sound mind may execute a will or a deed from any sort of motive satisfactory to him, whether that motive be love, affection, gratitude, partiality, prejudice, or even a whim or caprice.”
 
 Herrington v. Herrington,
 
 232 Miss. 244, 250-251, 98 So.2d 646, 649 (1957) (quoting
 
 Burnett v. Smith,
 
 93 Miss. 566, 47 So. 117, 118 (1908)).
 

 ¶ 28. Next, we consider his allegation of an oral trust agreement. Samuel’s argument again fails because Mississippi law does not recognize oral trusts in land. Mississippi Code Annotated section 91-9-1 (Rev.2004) states in part:
 

 Hereafter all declarations or creations of trusts ... in any land shall be made and manifested by writing, signed by the party who declares or creates such trust ... or else they shall be utterly void.
 

 Since there was no writing, the law will not give effect to the alleged agreement.
 

 ¶ 29. We note that, in the proper circumstances, equity may impose a constructive or resulting trust on the legal owner of real property despite the absence of a written trust agreement.
 
 Simmons v. Simmons,
 
 724 So.2d 1054, 1057 (¶ 6) (Miss.Ct.App.1998). However, that specific argument was never presented to the chancellor or raised on appeal.
 

 ¶ 30. Because we find that the chancellor was correct to issue a summary judgment on Samuel’s Rule 60 motion and Samuel’s complaint to set aside the deeds, the remaining issues are moot. Because the initial divorce was valid, Samuel’s second complaint for divorce was a nullity because it asked for a divorce to a nonexistent marriage. Further, since the conveyances to Mae Bell and Amy were valid and Amy is the rightful owner of the property, Samuel has no claim to the property and no basis for the lis pendens notice. Therefore, the chancellor was correct to find that the lis pendens notice should be cancelled.
 

 ¶ 31. Finding no error, we affirm the chancellor’s judgment.
 

 ¶ 32. THE JUDGMENT OF THE CHANCERY COURT OF MONROE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 LEE, C.J., IRVING, P.J., MYERS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.