# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CA-01293-COA

**GARY L. HALL**                                                                                          **APPELLANT**

**v.**

**CAROLYN J. HALL**                                                                                        **APPELLEE**

DATE OF JUDGMENT:                      08/14/2017
TRIAL JUDGE:                           HON. JOHN ANDREW HATCHER
COURT FROM WHICH APPEALED:             LEE COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:                ANGELA SHEREE BROOKS
ATTORNEY FOR APPELLEE:                 CHRISTOPHER G. EVANS
NATURE OF THE CASE:                    CIVIL - DOMESTIC RELATIONS
DISPOSITION:                           AFFIRMED - 03/19/2019
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE CARLTON, P.J., TINDELL AND McDONALD, JJ.**

**McDONALD, J., FOR THE COURT:**

¶1.     Gary L. Hall appeals the August 14, 2017 judgment of the Chancery Court of Lee County dismissing his petition for modification and other relief. Finding no error in the chancery court's ruling after a review of the record, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     Carolyn J. Hall and Gary were married on December 21, 1995, in Hamilton, Alabama. There were no children born to this marriage; however, both parties have children from their previous marriages.

¶3.     On December 20, 2004, Carolyn filed for divorce against Gary in the Chancery Court of Lee County, Mississippi, on the grounds of adultery and habitual cruel and inhuman

treatment or, alternatively, irreconcilable differences.

¶4. On January 20, 2005, Gary filed his answer and counterclaim for divorce based upon habitual cruel and inhuman treatment or, alternatively, irreconcilable differences.

¶5. On May 16, 2006, the chancery court issued a memorandum opinion, which granted Carolyn a divorce on the ground of adultery, awarded her $1,500 per month for periodic alimony, and divided the parties' marital property. The marital property included Gary's 401(k) plan, Employee Stock Ownership Plan, and Standex pension-plan. The court ruled that Carolyn was entitled to a lump-sum payment of $23,976.23 from Gary's 401(k) plan, a lump-sum payment of $2,976.13 from Gary's Employee Stock Ownership Plan, and $600 per month of Gary's Standex pension-plan if he retired at the normal age. At the time of the marriage in 1995, Gary's pension-plan benefit was projected to be $4,208 per month if he retired at the normal age. In December 2004, when Carolyn filed for divorce, Gary's pension-plan benefit was projected to be $5,212 per month if he retired at the normal age. The record reflects that the $600 per month payment to Carolyn was based on the increase in Gary's projected retirement income over the parties' ten-year marriage.

¶6. In accordance with the memorandum opinion referenced above, the judgment was entered on June 23, 2006. Neither party appealed. On August 20, 2007, the parties agreed to a "Qualified Domestic Relations Order," which included the above-mentioned award of payment to Carolyn from Gary's retirement plan.

¶7. As of December 31, 2007, Standex International Corporation, the parent company of

Masterbilt, Gary's employer, froze his pension benefits.[1] Although Gary had notice of this change, he did not attempt to modify the $600 award to Carolyn. Several years later, in November 2016, Gary accepted an early retirement offer from Masterbilt causing him to retire at the age of 62 instead of the normal retirement age of 65 as stated in his retirement plan. Even though Gary retired, he did not draw on the retirement funds.

¶8.    On February 23, 2017, Gary filed a petition for modification of a prior judgment and other relief. Gary contended that since the filing of the May 16, 2006 memorandum opinion and judgment and the post-trial motions filed by both parties, there had been a substantial and material change in circumstances. Gary argued that because his employer "froze" his pension-plan as of December 31, 2007, his projected monthly retirement amount decreased and was not the figure projected in 2006. Gary further asserted that a total elimination of any payment of his retirement benefits to Carolyn was necessary and proper.

¶9.    Carolyn filed her answer on May 3, 2017, asserting that Gary's claim was barred by doctrines of laches, judicial estoppel, and res judicata. Carolyn argued that Gary slept on his rights; therefore, the doctrine of laches applies and "[f]inality should be finality."

¶10.    A hearing on the merits was held on August 2, 2017, and the chancery court dismissed Gary's petition for modification by sustaining Carolyn's motion to dismiss. The judgment was entered on August 14, 2017, and Gary timely appealed.

¶11.    Gary asserts that the chancery court erred in dismissing his petition for modification.

---

[1] As of December 31, 2004, Gary's accrued pension benefits were $3,467. Gary is now asserting that his pension benefits will be between $3,366 and $4,004. The lower figure would allow his new wife to receive benefits as a surviving spouse.

## STANDARD OF REVIEW

¶12.    Our scope of review in domestic relations matters is limited. *In re Dissolution of Marriage of De St. Germain*, 977 So. 2d 412, 415 (¶7) (Miss. Ct. App. 2008). A court's factual findings will not be disturbed unless the court was "manifestly wrong, clearly erroneous or an erroneous legal standard was applied." *Id.* Furthermore, "[f]or questions of law, our standard of review is de novo." *Williams v. Williams*, 224 So. 3d 1282, 1284 (¶5) (Miss. Ct. App. 2017).

## DISCUSSION

**Whether the chancery court erred in dismissing Gary's petition for modification filed under Mississippi Rules of Civil Procedure 60(b)(5) and (6).**

¶13.    Gary's petition does not mention that it was filed under Mississippi Rules of Civil Procedure 60(b)(5) and (6). However, during the hearing on August 2, 2017, as well as within his brief to this court, Gary argued that he is entitled to relief pursuant to Rules 60(b)(5) and (6) and he is also entitled to equitable relief. Since this issue was raised with the chancery court we will address the Rule 60(b) arguments made by Gary.

¶14.    Mississippi Rules of Civil Procedure 60(b)(5) and (6) provide:

> (b) Mistakes; inadvertence; newly discovered evidence; fraud; etc. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
>
> . . . .
>
>> (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or

4

otherwise vacated, or it is no longer equitable that the judgment should have prospective application;

(6) any other reason justifying relief from the judgment.

The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than six months after the judgment, order, or proceeding was entered or taken. . . .

The supreme court follows the following criteria for determining Rule 60(b) motions:

(1) That final judgments should not lightly be disturbed; (2) that the Rule 60(b) motion is not to be used as a substitute for appeal; (3) that the rule should be liberally construed in order to achieve substantial justice; (4) whether the motion was made within a reasonable time; (5) [relevant only to default judgments]; (6) whether if the judgment was rendered after a trial on the merits-the movant had a fair opportunity to present his claim or defense; (7) whether there are intervening equities that would make it inequitable to grant relief; and (8) any other factors relevant to the justice of the judgment under attack.

*M.A.S. v. Miss. Dep't of Human Servs.*, 842 So. 2d 527, 530 (¶16) (Miss. 2003). *See also Carpenter v. Berry*, 58 So. 3d 1158, 1159 (¶18) (Miss. 2011); M.R.C.P. 60(b), advisory committee's note.

¶15.    Our court previously held in *Germain* that a court did not err when dismissing a motion brought under Rule 60(b) where the appellant waited five years to set aside a divorce judgment:

Mississippi Rule of Civil Procedure 60(b)(5) [states that] "it is no longer equitable that the judgment should have prospective application"[], [and] the catch-all provision under Mississippi Rule of Civil Procedure 60(b)(6) [provides for] "any other reason justifying relief from the judgment[.]"[] One who proceeds under either Rules 60(b)(5) or 60(b)(6) must do so "within a reasonable time." M.R.C.P. 60(b). The chancellor did not specifically state that Brenda failed to file her motion "within a reasonable time," but his ruling implies as much. We cannot find that the chancellor abused his discretion. Brenda filed her motion approximately five years after the chancellor entered the divorce judgment. The allegations raised within Brenda's motion could

5

have been submitted much earlier than five years after the judgment of divorce. Accordingly, we affirm the chancellor's decision to grant Robert's motion to dismiss.

*Germain*, 977 So. 2d at 416 (¶10).

¶16.    Rule 60(b) reads in pertinent part that relief must be sought "within a reasonable time." Additionally, the supreme court has held "Rule 60(b) provides for extraordinary relief which may be granted only upon an adequate showing of exceptional circumstances . . . ." *Entergy Miss. Inc. v. Richardson*, 134 So. 3d 287, 291 (¶10) (Miss. 2014). Here, Gary has not demonstrated any exceptional circumstances.

¶17.    Further, Rule 60(b) motions are not to be used as a substitute for appeal. *M.A.S.*, 842 So. 2d at 530 (¶16). Gary never appealed the original judgment of divorce or its retirement provisions. However, Gary has now filed a petition approximately ten years later challenging the retirement provisions of the divorce judgment. Moreover, during the hearing on August 2, 2017, Gary testified that his employer, Standex International Corporation, notified him that his retirement plan was frozen in 2007 and at least twice a year thereafter.[2] An excerpt of the hearing provides:

> Q:    Now, as to your pension plan, the specific retirement plan that we're here about today, after your divorce, isn't it true that you continued to get statements about your pension plan, Mr. Hall?
>
> A:    Yes. And if I may, I'm a little bit confused, too, myself if this is part of the ESOP and pension, or if that's different, the -- but anyway, go ahead. I'm sorry.
>
> Q:    Isn't --

---

[2] Notably, the trial court in *Germain* did not conduct a hearing and the ruling was affirmed; here, Gary was afforded a hearing and the opportunity to present evidence.

6

A:      But, yes, I've received some.

Q:      All right. And how often in the calendar year did Standex or -- who did these come from? Standex or Masterbilt?

A:      They came from Standex International.

Q:      All right. How many times in the calendar year did Standex send you a statement or an update on your various retirement plans?

A:      I'm trying to think back, Mr. Bailey. It was either once a quarter or twice annual.

Q:      Okay. So you would have either gotten two statements or four statements per year from Standex, correct?

A:      Correct.

Q:      And when you got those statements, did they put important information in there, such as the fluctuating value of your expected pension?

A:      I would expect they would have, Mr. Bailey. However, I didn't anticipate my retirement was going to come -- or my departure from Masterbilt was going to be this soon.

Q:      Okay.

A:      So I probably did not look very closely as I should have.

Q:      All right.  Now, Mr. Hall, back when this pension plan was frozen in 2007 –

A:       Um-hmm (yes).

Q:       -- you would have gotten notice of that from 2007, would you not, sir?

A:      I'm sure I would have.

Q:      You're certain they gave you that notice then?

7

A:      Yes.

Q:      All right. Now, let's make the record clear on this. You're a hardworking guy. You traveled. You were busy with your job. Is that correct?

A:       Correct.

Q:      People are wired differently, but you're the type of guy that maybe just didn't open these Standex statements, or you didn't pay much attention to them?

A:      Honestly, I didn't pay that much attention to them. At the time I would have probably reviewed it, looked to see what it was and said, okay, this is what it is, not thinking about, hey, this is a lot different, $1200 a month different than it was back in the time of the divorce.

Q:      Mr. Hall, isn't it true that you either knew or you should have known some time in 2007 when you got notice that your pension plan had been frozen that your pension benefits were going to be reduced?

A:      Probably should have brought it to court at that time.

Q:      Okay. But you waited from 2007 when you got notice that your pension plan had been frozen until 2017 in the month of February to file this, correct?

A:      Correct.

¶18.    Gary's petition could and should have been submitted much earlier than ten years after the memorandum opinion and divorce judgment.  Gary knew or should have known in 2007 that his retirement plan was frozen in 2007 and that his retirement benefits would most likely not be $5,200 per month as projected.  Gary failed to timely file his petition under Rule 60. In view of that, we affirm the court's decision to dismiss Gary's petition.

¶19. Our resolution under Rules 60(b)(5) and (6) renders discussions of laches, res judicata, and judicial estoppel unnecessary. Accordingly, we affirm the chancery court's ruling based on untimeliness pursuant to Rules 60(b)(5) and (6).

¶20. **AFFIRMED.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, TINDELL, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR.**