# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1999-CA-01357-SCT

*ANDREA VICTORIA PERKINS*

*v.*

*THOMAS GLENN PERKINS*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/14/99 |
| TRIAL JUDGE: | HON. FRANKLIN C. McKENZIE, JR. |
| COURT FROM WHICH APPEALED: | JONES COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | SHIRLEE FAGER BALDWIN |
| ATTORNEY FOR APPELLEE: | TERRY L. CAVES |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | REVERSED AND REMANDED - 06/21/2001 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 7/12/2001 |

**EN BANC.**

**COBB, JUSTICE, FOR THE COURT:**

¶1. This case is before this Court on appeal from the Jones County Chancery Court's denial of Andrea Victoria Perkins's Motion to Set Aside Judgment and Property Settlement Agreement filed in the Perkins's divorce. Finding that the statutory requirements were not followed in this case, we reverse and remand.

## FACTS AND PROCEEDINGS BELOW

¶2. Andrea Victoria Perkins (Victoria) and Thomas Glenn Perkins (Thomas) were married only two years at the time of their separation in June 1997. There were no children born of the marriage. Victoria originally filed a Complaint for Separate Maintenance alleging that Thomas had displayed abusive behavior and had asked her to leave the marital domicile. The complaint stated that Victoria was without income, had been diagnosed with an inoperable brain tumor and was not capable of employment. Thomas's Answer and Affirmative Defenses stated that he was ready, willing, and able to resume marital relations with his wife. Nine months after filing for separate maintenance, Victoria filed a Motion for Temporary Support but there is no record of an order ever being entered.[1] Soon thereafter, Thomas began discovery, but Victoria did not respond. Twice Thomas filed motions to compel, and twice the trial court ordered Victoria to answer the interrogatories and furnish the requested documents. However, neither the record before this Court nor the docket sheet from the trial court reflect any response.

¶3. During this time of seeking discovery, Thomas filed an Amended Answer, Affirmative Defenses and Counter-Claim for Divorce, charging as grounds for divorce Victoria's desertion and also her habitual cruel and inhuman treatment. Because this Court has only limited record excerpts before it, and the trial court docket sheet does not reflect the subject matter of orders filed, it is unclear exactly what transpired thereafter, but apparently the divorce hearing was set but not heard two or three times between July and October, 1998. In December 1998, the trial court entered an order granting Victoria a continuance due to

his "having received a letter from her doctor finding that she is physically unable to appear in Court on December 9, 1998," and resetting trial for March 25, 1999.

¶4. Victoria never filed any response to Thomas's amended complaint, affirmative defenses, and counter-claim for divorce, nor did she respond to the court's order to answer Thomas's interrogatories but apparently she appeared in court on the day set for trial. Although the final judgment mentions counsel being present, it is unclear who, if anyone, represented her at trial.[2]

¶5. On March 25, 1999, the day set for trial, the parties appeared in court and announced that a settlement had been reached. Unfortunately, neither the parties nor the chancellor requested that a record be made of what was said and done that day, thus making it impossible for this Court to know with certainty what transpired. Apparently after the settlement was reached, someone drew up the Final Judgment of Divorce and the Property Settlement Agreement which was entered by the court that day.

¶6. Because no record was made, we do not know what, if anything, the chancellor asked about the settlement, nor whether he even reviewed the agreement which was incorporated by reference into his Final Judgment for Divorce which was granted on irreconcilable differences. What we do know for sure is that the Final Judgment nowhere recites that the chancellor found the "provisions [of the written agreement for the settlement of any property rights] are adequate and sufficient" as required by Miss. Code Ann. § 93-5-2(2) (1994). For that reason alone, this Court must reverse and remand. However, there are other deficiencies which we also address infra.

¶7. Seven days after the judgment was entered, Victoria filed a timely Motion to Set Aside Judgment and Property Settlement Agreement, pursuant to M.R.C.P. 60(b)(1) & (6) & 59(e). In her motion Victoria argued that: she had been misled by misrepresentations made to her; there was not a full disclosure of assets or liabilities of the parties; there had not been a Motion to Withdraw Contested Pleadings or Order allowing withdrawal of contested pleadings; and there existed errors of facts and law which substantially affected the validity of the Property Settlement Agreement which was incorporated into the Final Judgment of Divorce. She prayed for the court to hear all matters pertaining to the "issues of equitable distribution and all marital issues." Thomas filed his Response to the Motion to Set Aside Judgment and Property Settlement Agreement asserting a Rule 12(b)(6) defense. The trial court denied Victoria's motion to set aside. Aggrieved, Victoria appeals to this Court, raising the following assignments of error:

> **ISSUE 1: DID THE TRIAL COURT PROPERLY DENY THE MOTION TO SET ASIDE JUDGMENT AND PROPERTY SETTLEMENT AGREEMENT.**
>
> **ISSUE 2: DID THERE EXIST ERRORS OF FACT AND LAW WHICH SUBSTANTIALLY IMPACTED THE VALIDITY OF THE PROPERTY SETTLEMENT AGREEMENT.**
>
> **ISSUE 3: WAS THE STATUTORY REQUIREMENT OF MISS. CODE ANN. SECTION 93-5-2 NOT COMPLIED WITH SUCH THAT THE FINAL JUDGMENT OF DIVORCE WAS NOT VALID.**
>
> **ISSUE 4: WERE THE REQUIREMENTS OF MISS. CODE ANN. SECTION 93-5-2 COMPLIED WITH TO BASE THE DIVORCE ON THE GROUNDS OF IRRECONCILABLE DIFFERENCES.**

**ISSUE 5: WAS THERE FULL FINANCIAL DISCLOSURE OF ASSETS AND PROPERTY SUCH THAT THE LOWER COURT COULD HAVE MADE AN ADEQUATE AND FULLY INFORMED DECISION AS TO THE PROPERTY SETTLEMENT AGREEMENT.**

¶8. We find that manifest error occurred which requires that we reverse and remand to the trial court for further proceedings consistent with this opinion. For that reason, we do not address all issues individually as they were presented.

## STANDARD OF REVIEW

¶9. "This Court's scope of review in domestic relations matters is limited." *Montgomery v. Montgomery*, 759 So.2d 1238, 1240 (Miss. 2000). "The findings of a chancellor will not be disturbed by this Court unless the chancellor was 'manifestly wrong, clearly erroneous or an erroneous legal standard was applied.'" *Id*. "Our standard of review when evaluating the denial of a Miss. R. Civ. P. 60 motion is abuse of discretion." *Id.* An appeal from a denial of a Rule 59 motion may address the merits of the entire underlying proceeding, and review of a trial judge's denial of a Rule 59 motion is limited to abuse of discretion. *Bang v. Pittman*, 749 So.2d 47, 52 (Miss. 1999); *Dissolution of Sanford v. Sanford*, 749 So.2d 353, 357 (Miss. Ct. App. 1999). Review of a denial of a Rule 60(b) motion considers only whether a judge abused the broad discretion granted by that rule which provides for extraordinary relief granted only upon an adequate showing of exceptional circumstances, and neither ignorance nor carelessness on the part of an attorney will provide grounds for relief. *King v. King*, 556 So.2d 716, 722 (Miss. 1990). A party is not entitled to relief merely because he is unhappy with the judgment, but he must make some showing that he was justified in failing to avoid mistake or inadvertence; gross negligence, ignorance of the rules, or ignorance of the law is not enough. *Id.* at 722.

## ANALYSIS

¶10. Victoria asserts that the proceedings of the divorce did not comply with the statutory requirements of Miss. Code Ann. § 93-5-2 (1994); the agreement did not comply with the requirement of a consent judgment; the agreement was not approved and signed by counsel for the parties; the 60 day time limit was not complied with; the court did not state in the document that the provisions were adequate; and the ground of irreconcilable differences was never pled by either party.

¶11. "Divorce in Mississippi is a creature of statute." *Gardner v. Gardner*, 618 So.2d 108, 111-13 (Miss. 1993) (citing *Massingill v. Massingill*, 594 So.2d 1173, 1175 (Miss. 1992)). A divorce based on irreconcilable differences has certain statutory requirements that must be met. "The starting point is that an irreconcilable differences divorce in Mississippi requires that neither spouse contest its granting." *Sanford*, 749 So.2d at 355; *See* Miss. Code Ann. § 93-5-2(5) (1994). "This does not mean that both spouses must fervently desire a divorce." *Sanford*, 749 So.2d at 355. "Unless a spouse exercises the right to contest it, a decree of divorce may be entered." *Id*. "A cross-complaint or counterclaim may be a contest to a divorce; a second complaint, inconsistent with the first complaint that was jointly filed, may also serve as a contest." *Massingill*, 594 So.2d at 1177; *McCleave v. McCleave*, 491 So.2d 522, 523 (Miss.1986). "Wavering on whether a divorce should be entered may often occur and does not invalidate the divorce." *Id*. "During the sixty day period for reflection after the filing of a divorce complaint, there may be oscillating from complete agreement to complete opposition and every level between." *Id*. "What is important is that agreement be validly expressed on the day that the chancellor is considering the issue." *Sanford*, 749 So.2d

at 356.

¶12. In the present case, a complaint for a fault-based divorce had been on file for over 60 days but no complaint for a divorce based upon irreconcilable differences was ever filed with the court. Victoria contended that she never agreed to a divorce until the day set for the trial and then only on misrepresentations made to her so that she would sign the Property Settlement Agreement.

¶13. It is not apparent to this Court that both parties came to trial prepared to obtain a divorce based upon irreconcilable differences. There is no record that either party sent a proposed property settlement agreement to the other side; rather it appears it was drawn up that day, following settlement discussions. On the day set for trial the parties came to court to address the merits of the case, i.e., the complaints before the court, which did not include a divorce based on irreconcilable differences.

¶14. While property settlement agreements are fixed and final and may not be modified absent fraud or contractual provision allowing modification, the statute on irreconcilable differences divorce is unequivocal. *Weathersby v. Weathersby*, 693 So.2d 1348, 1352 (Miss. 1997). One of the statutory requirements for a divorce based on irreconcilable differences requires that a divorce based on this ground must have been on file for 60 days before being heard:

> (4) Complaints for divorce on the ground of irreconcilable differences must have been on file for sixty (60) days before being heard. Except as otherwise provided in subsection (3) of this section, a joint complaint of husband and wife or a complaint where the defendant has been personally served with process or where the defendant has entered an appearance by written waiver of process, for divorce solely on the ground of irreconcilable differences, shall be taken as proved and a final judgment entered thereon, as in other cases and without proof or testimony in termtime or vacation, the provisions of Section 93-5-17 to the contrary notwithstanding.

Miss. Code Ann. § 93-5-2(4) (1994).

¶15. Victoria filed a complaint for separate maintenance, and did not ever amend it or file any other pleadings asking for or consenting to divorce.[3] Separate maintenance is a court-created equitable relief based upon the marriage relationship and is a judicial command to the husband to resume cohabitation with his wife, or in default thereof, to provide suitable maintenance of her until such time as they may be reconciled to each other. *Daigle v. Daigle*, 626 So.2d 140, 144 (Miss. 1993).

¶16. Miss. Code Ann. § 93-5-2 (1994), the statute governing irreconcilable divorces, provides for a party to withdraw the contest by leave and order of the court:

> (5) Except as otherwise provided in subsection (3) of this section, no divorce shall be granted on the ground of irreconcilable differences where there has been a contest or denial; provided, however, that a divorce may be granted on the grounds of irreconcilable differences where there has been a contest or denial, if the contest or denial has been withdrawn or canceled by the party filing same by leave and order of the court.

¶17. Thomas alleges that this was accomplished on the day set for trial, when the property settlement agreement was signed. This Court interprets subsection (5) to pertain to cases wherein parties have initially pled and filed for a divorce based on fault, or where irreconcilable differences was pled in the alternative in conjunction with a fault based divorce and was on file more than 60 days, as required by statute.

¶18. Thomas cites *Johnston v. Johnston*, 722 So.2d 453 (Miss. 1998) and *Rounsaville v. Rounsaville*, 732 So.2d 909 (Miss. 1999) for support of his argument that this Court has approved the chancellor's granting a divorce based on irreconcilable differences although the statute was not strictly followed. Victoria cites *Massingill v. Massingill*, 594 So.2d 1173 (Miss. 1992) for the proposition that the statute must be strictly construed.

¶19. Thomas argues that any technical flaw in the process of this case should be considered as harmless error and that Victoria had failed to show prejudice. Thomas cites to cases where the statute was not strictly followed but yet this Court approved the divorce based on irreconcilable differences. The cases cited by Thomas are distinguishable from the case sub judice since at least one of the parties, in the cited cases, had filed for a divorce based on irreconcilable differences in the initial pleading or as an alternative to fault grounds.

¶20. In *Massingill*, where the parties were not able to prove a fault based divorce, the chancellor found that the parties were entitled to a divorce based on irreconcilable differences, which had been plead in the alternative. This Court found that the necessary property settlement agreement had not been provided prior to the divorce and therefore the chancellor erred in granting the divorce. In *Massingill*, we stated that it is conceivable the required mutual consent in writing could have been accomplished by written stipulation, written agreement, or by some other viable means either prior to or during the last appearance before the chancellor. *Massingill*, 594 So.2d at 1178. It is possible for parties to go to court contemplating a fault based divorce and agree to settle, on the day of trial, for a divorce based on irreconcilable differences, if the parties have asserted irreconcilable differences as an alternative and the pleadings have been on file for 60 days. In *Rounsaville*, this Court upheld the chancellor's decision to grant a divorce based on irreconcilable differences where at the time of the granting of the divorce the parties had not entered into a property settlement, nor had the court adjudicated the issues as required under the statute. *Rounsaville v. Rounsaville*, 732 So.2d 909, 911 (Miss. 1999) (although the Chancellor technically erred, we held that error harmless since the husband showed no prejudice which would make the error reversible). We stated that we condemned the procedure used by the chancellor, and cautioned others against using a similar procedure in the future. *Id.* at 911.

¶21. The facts in the case here are distinguishable from *Rounsaville* and are governed by statute. "The statute's intent is to provide a less painful alternative to the traditional grounds for divorce which required the parties to publicly put on proof of sensitive private matters." *Grier v. Grier*, 616 So.2d 337, 340 (Miss. 1993). "The cornerstone of the process is mutual consent." *Id*. "The parties bargain on the premise that reaching an agreement will avoid the necessity of presenting proof at trial." *Id*. "It would be fundamentally unfair to hold either of the parties to portions of the package after the foundation of the bargain is removed."*Id*. Victoria did consent to the property settlement agreement and to the divorce based on irreconcilable differences, but she did so on the day of trial apparently without prior information that a divorce might be granted on the basis of irreconcilable differences, without having seen the property settlement agreement, and without having received full and correct financial disclosure as required by UCCCR 8.05. We find that granting a divorce, based on irreconcilable differences, on the day set for the trial to hear a fault based divorce fully contested by one of the parties, and where irreconcilable differences had not been pled as an alternative, flies in the face of the reason for the statutory option of parties being granted a divorce on the basis of irreconcilable differences. Had either party pled irreconcilable differences as an alternative, this case would be in line with *Rounsaville* and the parties could have agreed to a

property settlement on the day of trial.

¶22. After a review of the issues, we hold that the statutory requirements of § 93-5-2 were not met in this case and that the chancellor exceeded his authority in granting a divorce on the ground of irreconcilable differences. The purpose of irreconcilable difference divorce is for the parties to knowingly, without coercion, pressure, or undue influence, to enter into a settlement of issues and matters in the divorce complaint and to settle these matters civilly and voluntarily between the parties.

¶23. Financial documents submitted 3 years prior to the granting of the divorce do not present this Court with the proper tools to decide the correctness of the chancellor's decision that this settlement was adequate and sufficient. Had the proper procedures been followed, the parties, being free to contract, could have agreed to a similar document. Victoria made a timely objection under the facts of this case that warrant this Court to reverse and remand the cause with direction that it may not proceed further until the statute has been complied with, and that the parties have time to consider the property settlement agreement and its provisions such that each party enters into the proceeding being fully informed.

¶24. The provisions of the statute must be strictly complied with. We have granted a divorce based on irreconcilable differences when certain procedural safeguards were not followed but, in the present case, we find that Victoria's substantive rights are in issue. While the final outcome of this case might not result in any deviation from the present outcome, we are not in a position to make this determination. Victoria has a right to question the document that was provided for her to sign. This was apparently the first time that she had seen the document. The agreement did not state that the chancellor found the agreement to be adequate and sufficient. Even though the parties sought the court's approval and enforcement in this proceeding, one of the parties has made a timely objection and this Court believes the provisions governing no-fault divorce must control in this situation. "If that were not the case then an agreement when entered would be enforceable regardless" of the requirements of the statute. *Grier*, 616 So.2d at 340. The Court in this case is distinguishing this agreement on that basis. The no-fault divorce proceeding was not pursued by either side until the day set for trial. On that day the parties were present to consider a fault based divorced and/or separate maintenance. One party has now timely objected to the proceedings. In the case sub judice, from a procedural standpoint, the decision is wrong because § 93-5-2(4) requires that the complaint for divorce must have been on file for sixty days before it can be heard. *Peterson v. Peterson,* 648 So.2d 54, 57 (Miss. 1994). It is also wrong because the statutory requirement that the chancellor "find that the settlement is adequate and sufficient"[(4)] was not met. This case is reversed and remanded. All matters decided as a result of the decree are null and void and should be brought in another hearing. *Id.* at 57; *Sanford*, 749 So.2d at 360 (reversing the decree of divorce nullifies the property settlement).

¶25. Inasmuch as we have held that no divorce should have been granted, we in effect "wipe the slate clean and put the parties back where they were prior to trial." *Massingill*, 594 So.2d at 1177.

### CONCLUSION

¶26. We find that the chancellor's award of divorce upon grounds of irreconcilable differences amounts to manifest error because the statutory requirements for irreconcilable differences divorce were not met. Therefore, we reverse the judgment of the Jones County Chancery Court and remand for further proceedings consistent with this opinion.

¶27. **REVERSED AND REMANDED**.

**PITTMAN, C.J., BANKS, P.J., SMITH, WALLER, DIAZ AND EASLEY, JJ., CONCUR. McRAE, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY MILLS, J.**

**McRAE, PRESIDING JUSTICE, DISSENTING**:

¶28. The majority asserts that the provisions of Miss. Code Ann. § 93-5-2 (1994) were not complied with in this case, in that the Property Settlement Agreement and the Final Judgment of Divorce were entered on the day of trial, and that the divorce complaint had not been on file with the court for a period of sixty days prior to the final judgment. Because the parties were not prejudiced in this case and because of *Rounsaville v. Rounsaville*, 732 So. 2d 909 (Miss. 1999), I find that the actions of the chancery court were harmless error at most. Accordingly, I dissent.

¶29. Based upon similar facts, the parties in *Rounsaville* entered into an Agreed Judgment of Divorce on the grounds of irreconcilable differences, at which time the chancellor also ordered a temporary award of child custody and support. The parties were ordered to come to an agreement on permanent child custody and support, as well as a property division and all remaining issues, within thirty days, and if they could not, then these issues were to be resolved by the chancellor. Both parties were represented by counsel. *Id.* at 910. The parties subsequently entered into a Child Custody, Support and Property Settlement Agreement, and the chancellor entered a final judgment approving the agreement on the same day. Approximately six months after this latter agreement, the husband filed to set this agreement aside for failure to comply with Miss. Code Ann. § 93-5-2. The husband asserted that the court erred because at the time of the Agreed Judgment of Divorce, the parties had not yet entered into an agreement concerning the child support and property rights of the parties. 732 So. 2d at 910. The chancellor denied the husband's motion to set aside, and we affirmed, stating that the error was merely procedural and not prejudicial. *Id.* at 911.

¶30. The majority asserts that in order to allow noncompliance with the sixty-day requirement of Miss. Code Ann. § 93-5-2, the parties must have filed "irreconcilable differences" as an alternative grounds for divorce. *Rounsaville* did not require this, but held that the latter filing of the child custody, support and property agreement could be entered following the final judgment for divorce, as long as prejudice was not shown to either party. Both parties in *Rounsaville* were represented by counsel, and both agreed to the terms of the divorce.

¶31. In the present case, the trial was rescheduled at least three times with the actual trial date being in March of 1999. On the day of trial, Thomas agreed to withdraw his former grounds for divorce and Victoria her complaint for separate maintenance, and both parties agreed to a divorce upon the grounds of irreconcilable differences. This is stated in the Property Settlement Agreement, which was incorporated into the Final Judgment of Divorce. There was no need to let the divorce decree stand for 60 days as the parties had been anticipating this day for over a year.

¶32. There was also no evidence of overreaching in this case. Victoria failed to respond to the set of interrogatories and requests for production of documents propounded to her by Thomas in April 1998, despite two orders of the court ordering her to respond. The interrogatories asked Victoria questions about the value of her property, her assets and liabilities. Since she did not respond and a transcript of the trial was not made, it is unclear whether the chancellor took as true the values and assets Victoria listed in her 1997 complaint for separate maintenance. The majority states that, "financial documents submitted 3 years

prior to the granting of the divorce do not present this Court with proper tools to decide the correctness of the chancellor's decision that this settlement was adequate and sufficient." However, Victoria herself submitted these same financial documents in her "Appellant's Record Excerpts" to this Court in her appeal. In addition, it does appear from the final property settlement that the couple had very little property to split between them.

¶33. The couple had equity in the home they had owned together.[(5)] Although Victoria was required by the agreement to pay an appraiser's fee, she was also entitled to one-half of the equity in the home and for reimbursement of one-half of the appraiser's fee, if there was sufficient equity remaining. Upon payment of Victoria's half, Thomas was required to assume payments on the house. This appears to be an equitable solution as Victoria unfortunately had an inoperable brain tumor and could not work. The husband was given the exclusive use and possession of his 1994 vehicle, but it appears from the record that Victoria also had a vehicle of her own at the time she filed her complaint for separate maintenance. On Victoria's "Plaintiff's Financial Declaration," she listed a 1989 Buick Skylark, registered only in her name.

¶34. From the record, it also appears that the two worked at the same place of employment, the South Central Regional Medical Center (SCRMC). The property settlement required Victoria to release any and all claims to Thomas's retirement account, but it could quite possibly have been the case that Victoria had her own retirement accounts from the same place of employment.

¶35. Other than the house, there were very few assets between the parties. There were no children born of the marriage. The property division in this matter appears to have been a somewhat simple one to perform as the couple had only been married for two years prior to their permanent separation. The couple owned a home together that had equity in it, and it appears that both parties had their own vehicles and their own retirement accounts. Thomas was also required by the property agreement to be responsible for a list of nine debts, including what appears to be several credit cards, a car payment, and student loans. Victoria was responsible for her medical bills, but Thomas was required to pay his wife's monthly health premiums for a period of six months following the date of their divorce. The record indicates that both parties were represented by attorneys, and that both consented to the agreement.

¶36. The majority erred when it stated that Victoria appears to have been under-represented by counsel. The majority is mistaken when it states in its second footnote that

> [t]he settlement agreement contains, in paragraph XVI, the name of an attorney who is never mentioned anywhere else in the record, but documents before and after that day contain the name of Victoria's original attorney....The trial court docket contains references to motions and orders regarding substitution of counsel, but there is nothing in the record before this Court to show who withdrew and who was substituted.

¶37. The Property Settlement Agreement in paragraph XVI lists Richard Dymond as Victoria's attorney. It appears from the record that on August 13, 1998, Victoria's original attorney, Deborah Williams Avery, filed a motion to withdraw and to substitute counsel, and that Richard Dymond was substituted as counsel for Victoria. Avery cited her busy schedule and an emotional attachment to her client as reasons for her withdrawal. On September 23, 1998, Dymond subsequently filed a notice of entry of appearance with the chancery court. Although it appears from the record that Dymond did not file a motion to withdraw from the matter, Victoria filed her motion to set aside the judgment and property settlement agreement with her new attorney, Shirley Fager Baldwin, signing the motion.

¶38. To answer the majority's footnote, Dymond, the attorney representing Victoria on the day of the trial, did appear in the record prior to the signing of the final divorce judgment, and after that day, Victoria was not represented by her original counsel, but by a new attorney, Baldwin. Therefore, it appears from the record that Victoria had counsel representing her at all stages of the litigation.

¶39. The parties to this litigation had been expecting a divorce between them for some time. The trial was delayed several times over the course of many months. Discovery appeared difficult, and the parties ultimately came to an agreement on the day of trial. The fact that the final judgment of divorce and the property settlement agreement were signed on the same day did not prejudice either of the parties. The starting point in an irreconcilable differences divorce is that neither party contest the divorce. *Dissolution of Sanford v. Sanford*, 749 So. 2d 353, 355 (Miss. Ct. App. 1999); Miss. Code Ann. § 93-5-2(5) (1994). "This does not mean that both spouses must fervently desire a divorce. Unless a spouse exercises the right to contest it, a decree of divorce may be entered." *Sanford*, 749 So. 2d at 355. The parties in this matter did not contest the divorce, but instead came to an agreement on the grounds of irreconcilable differences.

¶40. The *Sanford* court provides an excellent summary of the matter when it states that, "what is important is that the agreement be validly expressed on the day that the chancellor is considering the issue." *Id.* at 356. The parties to this agreement may not have passionately wanted to separate their union. Nevertheless, both parties appeared on the scheduled trial date, after postponing the date at least three times and being represented by attorneys, and agreed to a divorce based upon irreconcilable differences.

¶41. I would affirm the chancellor in this matter as there is evidence to support this decision. The final judgment of divorce and property settlement agreement should be enforced.

¶42. For the above reasons, I dissent.

##### MILLS, J., JOINS THIS OPINION.

1. Although on appeal Victoria designated the record to be "all clerk's papers, trial transcripts, and exhibits filed, taken, or offered in this case," the only records before this Court are the record excerpts of each of the parties.

2. The settlement agreement contains, in paragraph XVI, the name of an attorney who is never mentioned anywhere else in the record, but documents before and after that day contain the name of Victoria's original attorney. Neither counsel's signature appears on the Final Judgment of Divorce. The trial court docket contains references to motions and orders regarding substitution of counsel, but there is nothing in the record before this Court to show who withdrew and who was substituted.

3. The last paragraph of the Property Settlement Agreement, which was entitled "XVII - Merger", is the only place consent is mentioned. In one sentence in that paragraph, both Victoria and Thomas withdraw their earlier actions and "consent to a divorce on the ground of irreconcilable differences."

4. Although today this Court does not direct that the chancellor in this case must make on-the-record findings of fact and conclusions of law regarding the equity of the distribution of the marital estate in irreconcilable differences divorces where the parties have presented a written property settlement agreement, *see Heigle v. Heigle*, 771 So.2d 341 (Miss. 2000)( requiring such findings where distribution

of the assets was contested), we nevertheless remind all chancellors that the principles of equitable distribution apply in all divorce cases, whether based on fault grounds or irreconcilable differences.

The statutory requirement of Section 93-5-2 that the "court finds such provisions adequate and sufficient" clearly anticipates more than just a mere recitation of the obligatory words of the statute. In the present case, the record before us presents a very one-sided agreement, which on its face appears inequitable.

5. Although the home's value and equity appear to be from records from 1997, the beginning of the litigation between the parties, these are the only records available to the Court. As noted above, Victoria failed to answer any of the interrogatories or requests for production of documents propounded to her by Thomas, which asked questions pertaining to her value in any property, real or personal, and about her liabilities and assets. In 1997, the couple had equity in the house, and it appeared to be the same situation when the chancellor approved this property agreement.