ROBERTS, J.,
 

 for the Court.
 

 ¶ 1. This appeal is the result of the marital difficulties between Jimmie L. Tyrone and Kay Sherman Tyrone. Jimmie filed a complaint for separate maintenance. Kay filed a response that included, among other things, a counterclaim for an irreconcilable differences divorce and a motion to dismiss Jimmie’s complaint for separate maintenance. The Lawrence County Chancery Court granted Kay’s motion to dismiss and never conducted a hearing on her counterclaim for a divorce.
 

 ¶2. Undeterred, Jimmie filed a second complaint for separate maintenance in the Lawrence County Chancery Court. Jimmie filed his second complaint under the same cause number that had been assigned to his previously-filed and dismissed first complaint. Kay responded with a motion to dismiss and argued that the chancellor should dismiss Jimmie’s second complaint because Jimmie’s first complaint, under the same cause number, had been dismissed. Kay did not include a counterclaim for a divorce in her response to Jimmie’s second complaint. However, during a subsequent hearing, the chancellor ordered Jimmie and Kay to come to an agreement regarding the division of their marital property because the chancellor intended to grant them a divorce based on irreconcilable differences.
 

 ¶ 3. Jimmie and Kay followed the chancellor’s instructions and entered a form agreement that will be described in greater detail below. Jimmie later claimed that Kay was in contempt of the chancellor’s order regarding division of the marital property. Kay reciprocated and filed her own claim that Jimmie was in contempt of
 
 *1208
 
 the same order. The chancellor conducted a hearing, but he did not find anyone in contempt. Instead, the chancellor resolved certain matters regarding the appraisal of the marital home and division of the marital property. Kay subsequently filed unsuccessful post-trial motions, including a motion to set aside the divorce. Aggrieved, Kay appeals and argues that the chancellor erred by granting a divorce based on irreconcilable differences and in failing to set aside the judgment of divorce because, at the time the chancellor entered the judgment of divorce, neither she nor Jimmie had filed a pleading requesting a divorce based on irreconcilable differences. We find Kay’s argument to be persuasive. Accordingly, we reverse the chancellor’s judgment and remand this matter to the active docket of the Lawrence County Chancery Court for further proceedings consistent with this opinion.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 4. Jimmie and Kay were married on April 2, 1966. Although they had one daughter during their marriage, that daughter was emancipated by the time Jimmie had filed a complaint for separate maintenance on November 7, 2003. Jimmie claimed Kay deserted him. He requested use of the marital home and separate maintenance payments from Kay.
 

 ¶ 5. On February 23, 2004, Kay filed a multi-purpose response pleading that included the following: (1) a motion to dismiss Jimmie’s complaint, (2) a response to Jimmie’s complaint for separate maintenance, (3) a “motion for temporary relief,” and (4) a “cross-complaint” for divorce.
 
 [1]
 
 In the motion to dismiss a portion of her response, Kay argued that the chancellor should dismiss Jimmie’s complaint for separate maintenance for the following reasons: (1) she and Jimmie were residents of Humphreys County when they separated; (2) she was a resident of Alcorn County, Mississippi; (3) Jimmie’s complaint failed to state a claim upon which relief could be granted; and (4) Jimmie was not entitled to relief because he intentionally made unspecified false representations in his complaint for separate maintenance. In her “cross-complaint,” Kay requested a divorce based on Jimmie’s alleged cruel and inhuman treatment. Alternatively, Kay requested a divorce based on irreconcilable differences.
 

 ¶ 6. On September 27, 2004, the chancellor entered an “order of dismissal.” The chancellor’s order did not indicate whether the chancellor dismissed the case due to Kay’s motion to dismiss or any other reason whatsoever. However, the chancellor’s order of dismissal states that “[t]his cause coming on this date on motion for a dismissal and the Court, having duly heard said motion, finds that same should be and is hereby dismissed.” Accordingly, it appears that the chancellor granted Kay’s motion to dismiss and dismissed the cause in its entirety.
 

 ¶ 7. Neither Jimmie nor Kay filed a motion for relief from the chancellor’s order dismissing the case. The record does not indicate that either Jimmie or Kay filed a motion to reinstate the case to the chancery court’s active trial docket. However, on September 30, 2004, Jimmie filed a second complaint for separate maintenance. Jimmie changed the date of separation in his second complaint. In his first complaint, Jimmie claimed he and Kay separated in May 2003. In his second complaint, Jimmie claimed he and Kay
 
 *1209
 
 separated in July 2008. Aside from other slight changes that are irrelevant to our present purposes, Jimmie’s second complaint was otherwise substantially the same as his first complaint. Within his second complaint, Jimmie swore that “there is not presently pending action for divorce between the parties.” The Lawrence County Chancery Clerk assigned Jimmie’s second complaint the same cause number that had previously been assigned to Jimmie’s dismissed first complaint.
 

 ¶ 8. On December 10, 2004, Kay filed a motion to dismiss Jimmie’s second complaint. Kay noted that: Jimmie’s first complaint for separate maintenance had been dismissed; the order of dismissal had not been set aside; and Jimmie’s first complaint had not been reinstated. According to the record, the next significant proceedings occurred on April 21, 2005.
 
 [2]
 
 The parties’ appellate briefs state that the chancellor conducted a hearing on April 21, 2005. That hearing is not transcribed in the record. Be that as it may, the parties report that, during the April 21, 2005, hearing, the chancellor directed Jimmie and Kay to reach some agreement before they left the courtroom so that the chancellor could enter a divorce.
 

 ¶ 9. Apparently, Jimmie and Kay managed to reach an agreement, because the record contains a document titled “agreed order” that is dated April 21, 2005.
 
 [3]
 
 The agreed order reflects that Jimmie and Kay received a divorce based on their irreconcilable differences and states that they settled all matters regarding division of the marital property. The section of the form regarding child custody and child support were struck through, as was most of the second page, which addressed child visitation and provisions regarding medical care for children. The third and final page, which purportedly sets out the provisions regarding the property settlement, is almost indecipherable. There is a substantial amount of printed writing in the margins, and a significant portion of the printed words are struck through.
 

 ¶ 10. As best we can tell, pursuant to the agreed order, Jimmie received the exclusive use and possession of the marital home. Handwriting in the margin of the agreed order states as follows:
 

 The parties shall have the home appraised by an appraiser selected by the Court at the parties’ joint expense and shall then calculate the equity in the home giving credit of 15% off the top and credit for principle paid by Mr. Tyrone since the separation [illegible] Ms. Tyrone shall be paid her equity to be done within 90 days of this judgment^]
 

 Kay received exclusive use and possession of some appliances, furniture, and other personal items. There was a notation indicating that some of the furniture “ha[d] been stolen.” Additionally, the parties agreed to pay all debts in their own name. Other handwritten notations appear requiring: (1) appraisal of three “18 wheelers and trailers accumulated during the marriage” and that Jimmie “shall pay [Kay] her one-half interest in the same”; and (2) that Jimmie “timely pay[s] for [Kay’s] car and [that] she keep it.” Anoth
 
 *1210
 
 er handwritten notation appears to put a ninety-day limit on those two obligations. Scribbled below the necessary signatures are the provisions that Kay’s “name shall revert to Sherman [and Jimmie] shall take no action to affect [Kay’s] Social Security income.” Although the order was executed on April 26, 2005, it was not filed with the chancery clerk until May 9, 2005.
 

 ¶ 11. The delayed filing of the agreed order coincided with what appears to have been the chancellor’s unrequested sua sponte entry of an order reinstating Jimmie’s first complaint to the chancery court’s active docket. Stated differently, at the same time the agreed order was filed, the chancellor entered and filed an order reinstating Jimmie’s first complaint for separate maintenance. The record does not indicate that either Jimmie or Kay moved to reinstate Jimmie’s previously-dismissed complaint for separate maintenance. The chancellor did not elaborate as to why Jimmie’s first complaint was reinstated to the chancellor’s active docket. The reinstating order simply states that “[t]his cause having been dismissed[,] is hereby reinstated to the active docket. So ordered and adjudged on this the 26th day of April 2005.” The only logical interpretation of the purpose behind reinstating Jimmie’s first complaint was to attempt to resurrect Kay’s counterclaim for a divorce based on irreconcilable differences so that the order granting a divorce based on irreconcilable differences was entered after a request for such a divorce.
 

 ¶ 12. Moving forward to the events that followed, on June 27, 2005, the chancellor appointed appraiser Jimmy W. Tyrone (Tyrone) to appraise the marital home.
 
 [4]
 
 Tyrone appraised the marital home and attached property at a value of $73,000. Although Tyrone’s appraisal was referenced in a subsequent court order, the appraisal was never introduced into evidence during the only transcribed hearing in this matter. It was, however, introduced for identification purposes only.
 

 ¶ 13. On October 26, 2005, Jimmie’s attorney mailed a letter and a quitclaim deed to Kay’s attorney. Pursuant to the instructions in the letter, Kay was to execute the quitclaim deed transferring her ownership in the marital property to Jimmie in exchange for $5,043, which according to the letter, represented Kay’s equity in the marital home. Kay apparently refused to do so, because on December 12, 2005, Jimmie filed a complaint accusing Kay of contempt for refusing to execute the quitclaim deed. Kay denied Jimmie’s allegation and filed a counterclaim for contempt against Jimmie. According to Kay, Jimmie refused to abide by the agreed order in that he failed to make timely payments on her car. Kay also claimed that Jimmie was in contempt because he refused to allow her on the property of the marital home so that she could retrieve the items she had received in the agreed order.
 

 ¶ 14. On November 11, 2006, the chancellor conducted the only transcribed hearing in this case. Purportedly on Jimmie’s complaint for contempt and Kay’s counterclaim for contempt, the hearing actually focused primarily on whether Tyrone’s appraisal was adequate.
 
 [5]
 
 Kay called Willie Hill, a certified real estate appraiser, as a witness.
 
 [6]
 
 Hill testified that he performed
 
 *1211
 
 what he described as a “drive-by appraisal,” which entailed looking at the property from the street. Hill stated that he performed a “drive-by appraisal” because Jimmie would not allow him on the premises, and he was unable to bypass the fence and the locked gate. Hill appraised the marital home and the property it was situated on at $110,000. Tyrone, the court-appointed appraiser, was summoned for the hearing, but he did not report to testify about his appraisal. As a result of the hearing, the chancellor ordered Jimmie to allow Hill on the marital property to conduct a proper appraisal. The chancellor indicated that the parties would reconvene before the chancery court, but there is no indication that the parties actually reconvened.
 

 ¶ 15. On April 25, 2007, the chancellor issued an order setting the value’ of the marital home. The chancellor noted that there were two appraisals and that there were discrepancies as to the size of the property in the appraisals. The chancellor went on to note that, on some unidentified date, the chancellor had viewed the marital home and real property with the attorneys for Jimmie and Kay. After viewing the property, the chancellor requested that Tyrone adjust his appraisal because he did not include part of the house that had been partially converted into living space. The order reflected that Tyrone’s appraisal had been adjusted upward from $73,000 to $76,500.
 

 ¶ 16. The chancellor deducted $20,000 from Tyrone’s appraisal value, which was reportedly necessary to repair damage to the home’s foundation. The chancellor then deducted $33,500 from the adjusted value of the marital home. The $33,500 figure was the “pay-off’ on the mortgage on the home. For reasons that are not completely clear’, the chancellor stated that “of course, the Court is taking off the 15 percent from the $56,000.” Accordingly, the chancellor subtracted an additional $9,500 from the remaining $23,000. The chancellor calculated that $23,000 minus $9,500 was $14,500.
 
 [7]
 
 The chancellor found that Kay was entitled to one-half of that figure, which the chancellor calculated as $7,200.
 
 [8]
 
 The chancellor then noted that Jimmie owed Kay $5,000 to pay off the remaining debt on her car. Accordingly, the chancellor awarded Kay a judgment of $12,500 against Jimmie.
 
 [9]
 

 ¶ 17. On May 7, 2007, Kay filed a motion for “rehearing/reconsideration.” The chancellor filed an order overruling Kay’s motion on September 24, 2007. Four days earlier, on September 20, 2007, Kay filed a motion to set aside the judgment of divorce. Kay argued that the chancellor should set aside the divorce because, at the time the chancellor entered a judgment of divorce, neither party had requested a divorce under any grounds, much less one that had been on file for sixty days prior to the entry of the chancellor’s order.
 

 
 *1212
 
 ¶ 18. On October 24, 2007, Kay filed her notice of appeal “of the judgment against her ... rendered and entered ... on the 24th day of September, A.D., 2007.”
 
 [10]
 
 At that time, the chancellor had not ruled on her motion to set aside the judgment of divorce. However, the chancellor subsequently entered an order “dismissing” Kay’s motion to set aside the judgment of divorce. Meanwhile, Jimmie requested that the Mississippi Supreme Court dismiss Kay’s appeal. On December 11, 2008, the supreme court ruled that Jimmie’s motion should be passed for consideration with the merits of the appeal.
 
 [11]
 

 STANDARD OF REVIEW
 

 ¶ 19. The findings of a chancellor will not be disturbed unless the chancellor was either manifestly wrong or clearly erroneous or the chancellor arrived at those findings after an application of an erroneous legal standard.
 
 Lowrey v. Lowrey,
 
 919 So.2d 1112, 1117(¶16) (Miss.Ct. App.2005). We review questions of law de novo.
 
 Estate of Jones v. Howell,
 
 687 So.2d 1171, 1174 (Miss.1996).
 

 ANALYSIS
 

 ¶ 20. Kay claims that the chancellor should have set aside the judgment of divorce because neither she nor Jimmie had filed a request for a divorce based on irreconcilable differences when the chancellor entered his judgment of divorce. The chancellor found no merit to Kay’s claim, and he did not elaborate on his decision. However, we find that Kay’s argument has merit.
 

 ¶ 21. After Jimmie filed his first complaint for separate maintenance, Kay responded with, among other things, a counterclaim for an irreconcilable differences divorce. The chancellor subsequently dismissed the case. It is not exactly clear why the chancellor entered an order of dismissal. However, the primary basis of Kay’s motion to dismiss was that the Lawrence County Chancery Court had no jurisdiction over her. That is, Kay argued Jimmie’s complaint should be dismissed because she and Jimmie were not residents of Lawrence County at the time they separated, and she was not a resident of Lawrence County when Jimmie filed his first complaint.
 
 [12]
 

 ¶ 22. The chancellor subsequently dismissed the case. The chancellor’s order of dismissal states that “[t]his cause coming on this date
 
 on motion for a dismissal
 
 and the Court,
 
 having duly heard said motion,
 
 finds that same should be and is hereby dismissed.” Accordingly, we can only conclude that the chancellor’s decision followed Kay’s motion to dismiss.
 

 ¶ 23. The chancellor did not elaborate on his reasoning, but the chancellor’s decision could have only been predicated on a finding that the Lawrence County Chancery Court did not have personal jurisdiction over Kay.
 
 [13]
 
 The record supports
 
 *1213
 
 this conclusion. Kay was served with Jimmie’s complaint on December 5, 2008. The sheriffs return indicates that an Alcorn County Deputy Sheriff personally served Kay in Alcorn County. The record does not indicate whether Jimmie and Kay were residents of Lawrence County at the time they separated. In her motion to dismiss, Kay stated that she and Jimmie were residents of Humphreys County when they separated. Based on the substance of Kay’s motion to dismiss and the language in the chancellor’s order of dismissal, we can only conclude that the chancellor dismissed Jimmie’s complaint for lack of personal jurisdiction over Kay. Accordingly, Kay’s alternative pleading for a divorce, which was based on irreconcilable differences, was never properly before the chancellor.
 

 ¶ 24. When Jimmie filed his second complaint for separate maintenance, the chancery clerk gave Jimmie’s new complaint the same cause number as the first complaint for separate maintenance.
 
 [14]
 
 In any event, when Jimmie filed his second complaint, he did not request a divorce based on irreconcilable differences. Additionally, he swore that “there is not presently pending [any] action for divorce between the parties.” Kay responded with another motion to dismiss. She did not file a second counterclaim for an irreconcilable differences divorce. On April 21, 2005, when the chancellor ordered Jimmie and Kay to come to some agreement, neither party had pled for an irreconcilable differences divorce.
 

 ¶ 25. It could be considered reasonable to conclude that, by coming to an agreement and later trying to enforce that agreement by arguing that Jimmie was in contempt, Kay consented to the irreconcilable differences divorce. “When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.” M.R.C.P. 15(b). However, the Mississippi Rules of Civil Procedure “are subject to limited applicability in [domestic-relations] actions which are generally governed by statutory procedures.” M.R.C.P. 81(a)(9).
 
 *1214
 
 In other words, if a provision of the irreconcilable-differences-divorce statute is contrary to the Mississippi Rules of Civil Procedure, the statute dictates the proper procedure to be followed.
 

 ¶ 26. “Divorce in Mississippi is a creature of statute.”
 
 Gardner v. Gardner,
 
 618 So.2d 108, 111 (Miss.1993). “A divorce based on irreconcilable differences has certain statutory requirements that must be met.”
 
 Perkins v. Perkins,
 
 787 So.2d 1256, 1261(¶ 11) (Miss.2001).
 
 Strict compliance with the statute is required. Id.
 
 at 1264(¶ 24). One such requirement is that “[cjomplaints for divorce on the ground of irreconcilable differences
 
 must
 
 have been on file for sixty (60) days before being heard.” Miss.Code Ann. § 93-5-2(4) (Supp.2008) (emphasis added). The Mississippi Legislature, in using the word “must,” did not give chancellors any discretion to waive the sixty-day requirement.
 

 ¶ 27. There was no pleading for divorce based on irreconcilable differences, much less one that had been on file for sixty days prior to the chancellor’s May 9, 2005, order. The chancellor attempted to sua sponte enter an order reinstating Jimmie’s first complaint to the active docket in what must have been an attempt to somehow resurrect Kay’s counterclaim for divorce. However, there is nothing in the record that indicates that either Jimmie or Kay provided notice to the other that the April 21, 2005, hearing would be on a request for a divorce based on irreconcilable differences.
 

 ¶ 28. Based on the lack of compliance with Mississippi’s express statutory requirements, we find that the chancellor’s decision to award a divorce based on irreconcilable differences amounts to manifest error on his part. Likewise, the chancellor committed reversible error when he decided to “dismiss” Kay’s motion to set aside the judgment of divorce. Consequently, we reverse the chancellor’s judgment of divorce and remand Jimmie’s complaint and Kay’s undecided motion to dismiss that complaint to the chancellor’s active docket. Because we have held that the chancellor should not have entered a divorce when none was requested, we have, in effect, wiped the slate clean and put the parties back where they were pri- or to trial.
 
 Perkins,
 
 787 So.2d at 1265(¶ 25).
 

 ¶ 29. THE JUDGMENT OF THE LAWRENCE COUNTY CHANCERY COURT IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE AP-PELLEE.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, CARLTON AND MAXWELL, JJ., CONCUR.
 

 [1]
 

 . The Mississippi Rules of Civil Procedure sets forth proper terminology for pleadings. Rather than a "cross-complaint,” Kay’s responsive request for a divorce should have been titled as a "counterclaim.” M.R.C.P. 81(f).
 

 [2]
 

 . On April 15, 2005, the chancellor entered an order for a continuance, stating that a hearing had been scheduled for March 22, 2005, and that the hearing at issue was rescheduled for April 21, 2005.
 

 [3]
 

 . The agreed order is a form document consisting of three pages of fill-in-the-blank see-tions which are completed in handwriting that is barely legible. Much of that handwriting appears in the margins of the document. But for the parties' briefs, this Court would be unable to decipher portions of the agreed order.
 

 [4]
 

 . Jimmy W. Tyrone is not related to the appellant.
 

 [6]
 

 .As best we can tell, Kay hired Hill with the chancellor’s approval after she received Tyr
 
 *1211
 
 one’s appraisal and expressed concerns about it.
 

 [7]
 

 . We take judicial notice that $23,000 minus $9,500 is actually $13,500 and not $14,500. Neither party took issue with the chancellor's miscalculation.
 

 [8]
 

 . We take judicial notice that one-half of $14,500 is $7,250 and not $7,200. Again, for whatever reason, neither party took issue with the chancellor’s calculation.
 

 [9]
 

 .We also take judicial notice that $7,200 plus $5,000 equals $12,200, rather than $12,500. Perhaps the additional $300 was to compensate Kay for the loss of personal items that were apparently stolen at some point. In any event, neither party objected to the unexplained discrepancy in the chancellor’s calculations.
 

 [10]
 

 . As previously mentioned, on September 24, 2007, the chancellor overruled Kay’s motion for reconsideration.
 

 [11]
 

 . Jimmie’s motion to dismiss is nothing more than a recitation of the substantive arguments he raises in his brief on appeal. Therefore, as we must consider his arguments on appeal in either event, we deny Jimmie’s motion to dismiss.
 

 [12]
 

 . Pursuant to Mississippi Code Annotated section 93-5-11 (Rev.2004):
 

 If the defendant be a resident of this state, the complaint shall be filed in the county in which such defendant resides or may be found at the time, or in the county of the residence of the parties at the time of the separation, if the plaintiff be still a resident of such county when the suit is instituted.
 

 [13]
 

 .Other than her jurisdictional arguments, Kay based her motion to dismiss on two other concepts: (1) Jimmie failed to state a claim upon which relief can be granted, and (2)
 
 *1213
 
 Jimmie intentionally misrepresented certain unspecified matters in his first complaint. Assuming that the chancety court had personal jurisdiction over the parties, Jimmie’s complaint for separate maintenance was certainly a claim upon which the chancery court could grant relief. Additionally, if Jimmie intentionally misrepresented something, that misrepresentation is unclear. Viewed alongside her jurisdictional arguments, it is possible that Kay was submitting that Jimmie intentionally misrepresented that the Lawrence County Chancery Court had jurisdiction over her.
 

 [14]
 

 . We have been unable to find any authority by which a chancery clerk may assign a previously-used cause number to a new pleading. To the contrary, Mississippi Uniform Chancery Court Rule 9.02 sets forth the following:
 

 The Clerk shall place and keep all papers pertaining to each action in a
 
 separate
 
 file and all papers pertaining to the same case shall be kept in the same file. The Clerk shall place and keep the files containing the papers in a filing case in the Clerk’s office, or vault,
 
 in numerical order.
 

 (Emphasis added). Jimmie's second complaint for separate maintenance was not "the same case” as his first complaint for separate maintenance. For example, in his first complaint, Jimmie alleged that the date of separation was in May 2003, but in his second complaint, he alleged that the date of separation was in July 2003. Accordingly, Jimmie's second complaint should have been kept in a separate file and should have received a different cause number. The improper assignment of the same cause number exacerbated the other procedural miscues that occurred before the chancery court. Just because the parties and the chancellor proceeded with new-but-somewhat-related litigation with a previously-used cause number does not mean it was permissible or that it somehow revived Kay’s counterclaim for divorce.