CARLTON, J.,
dissenting:
¶ 14. I respectfully dissent from the majority’s opinion. I disagree with the majority’s finding that the residents filed an untimely appeal from the Board’s decision. My disagreement with the majority stems from issues involving the following: (1) what constitutes an appealable decision of the Board; and (2) the Board’s power to reconsider its own prior resolution. Based upon a review of the record in this case, I would not vacate the decision of the circuit court but would instead affirm the decision on its merits. This dissent addresses the timeliness of the residents’ appeal rather than the merits of the circuit court’s decision.
¶ 15. As acknowledged, the majority dismisses the residents’ appeal for lack of jurisdiction, stating that the residents failed to timely appeal the Board’s October *1095 31, 2011 resolution. However, I find the appeal to be timely because the Board possessed the statutory authority to modify and reconsider its prior resolution, and the Board’s reconsideration of the prior resolution placed the underlying matter back into issue at the Board’s February 6, 2012 meeting. See Miss. Code Ann. § 19-3^40 (Rev.2012). Since the Board granted the residents’ motion to reconsider, the Board’s action at its February 6, 2012 meeting constituted an appealable decision, and as the record reflects, the residents timely appealed that decision.[4]
¶ 16. Precedent reflects that no formal judgment is required for an act of the Board to be appealable and that, if aggrieved by a decision of the Board, a person may appeal.[5] As stated, in the present ease, an appealable decision resulted when the Board: (1) entertained and granted a motion to reconsider its prior resolution based upon new information; and (2) voted to amend the prior resolution to clarify and add findings of fact. With respect to the right to appeal, the plain language of Mississippi Code Annotated section 11-51-75 (Rev.2012) states that “[a]ny person aggrieved by a judgment or decision of the board of supervisors ... may appeal within ten (10) days from the date of adjournment at which session the board of supervisors ... rendered such judgment or decision....” Clearly, section 11-51-75 provides a person who is aggrieved by a decision of the Board the right to appeal the decision. This remains true even though there is no formal “judgment” since the action or order denying or approving some action - constitutes a decision of the Board.[6] In this case, the Board’s decision is evidenced by the following: (1) the bill of exceptions; (2) the residents’ motion to reconsider; (3) the Board’s delay in ruling on the motion; (4) the agenda for the February 6, 2012 meeting; and (5) the transcript and minutes of the February 6, 2012 meeting, where the Board reconsidered the resolution.
¶ 17. Section 19-3-40 establishes the Board’s power to adopt any order, resolution, or ordinance regarding county affairs and to also alter, modify, and repeal such orders or resolutions. As acknowledged, in the present case, the minutes of the February 6, 2012 meeting reflect the Board’s action and decision, and the minutes show that the Board indeed entertained the motion to reconsider, granted the motion, and then modified the prior resolution with factual findings. A review of the October 31, 2011 resolution reflects that the original resolution contained inaccurate factual assertions, mainly that the portion of the Co-Op Road at issue provided no primary access to occupied premises and served only one landowner, C & G Railroad, who requested the County’s abandonment of the road. The factual statements in the original resolution impeded upon rights of existing private easements and upon the right of access that the Co-Op Road provided to the residents.
*1096 ¶ 18. The Board issued its original resolution on October 31, 2011. The residents then filed a written motion to reconsider and, at the Board’s February 6, 2012 meeting, presented new ' information to the Board that conflicted with the factual assertions contained within the resolution. As reflected by this case’s procedural history, the residents now appeal the decision made by the Board at its February 6, 2012 meeting, where the Board reconsidered and amended its prior resolution from the October 31, 2011 meeting.
¶ 19. The record establishes that the Board issued an appealable decision at the February . 6, 2012 meeting. The agenda for the February 6, 2012 meeting, and relevant portions of the transcript from that meeting, reflect the following: the action taken by the Board in rendering the decision to reconsider its prior order; the Board’s consideration of the new information regarding the impact of the prior decision on private-easement rights; and the Board’s decision and vote to amend the prior resolution. The agenda item “VI” for that meeting references the “Board’s Order — Opening of Co-Op Road.” The transcript of that February 6, 2012 meeting reflects that the residents requested by prior written motion and ore tenus motion that the Board reconsider its prior order issued on October 31, 2011. The meeting transcript further reflects that the stated purpose of the motion for reconsideration was to seek amendment of the prior order and to allow the Board to consider new information about the impact of the prior resolution, which closed the Co-Op Road and adversely impacted the private-easement rights of private-property owners to access the road.
¶20. The February 6, 2012 meeting transcript also shows that, upon reconsidering the prior resolution, the Board discussed the County’s intent to absolve itself of responsibility to maintain the road. The transcript reflects, however, that the Board expressed that the County possessed no objections to maintenance of the road or to private easements by private-property owners or C & G Railroad. The transcript reflects that new information was provided to the Board to demonstrate that the prior resolution, which closed the road and directed it to be barricaded, adversely affected private-easement rights. This new information conflicted with the assertions of fact contained in the October '31, 2011 resolution, and the residents therefore asked the Board to reconsider its prior resolution to abandon, close, and barricade the road. The residents further asked that the Board amend and withdraw the prior resolution since the Board lacked awareness of the private easements when issuing the prior resolution containing the faulty assertions of fact.
¶ 21. The transcript of the Board’s February 6, 2012 meeting reflects that the residents suggested the following two options to the Board: (1) amend the prior order of the Board with a finding of fact that the County was unaware of the private easement; or (2) reopen the road. The residents explained to the Board that closing the road impacted the private-easement rights existing between the landowners and C & G Railroad and affected the private landowners’ rights to access the road. The new information demonstrated to the Board the unintended adverse effect that the prior resolution to close, or effectively abandon, the road and to erect barricades had produced on private-property owners’ existing easement rights to use the road to access their property.
¶ 22. The Board then rendered an ap-pealable decision at the February 6, 2012 meeting. After the residénts raised their request that the Board reconsider and amend its prior resolution, Supervisor Le *1097 roy Brooks adopted the motion. As adopted by Supervisor Brooks, the motion showed the road as abandoned rather than closed, directed the barricades to be removed, and directed the placement of a sign indicating the end of the County’s maintenance. The motion received a second from Supervisor Harry Sanders, and the vote on the motion passed unanimously by a 5-0 vote. By granting the motion to reconsider, the Board again placed the underlying matter of the prior resolution, and its merits, at issue before the Board at the February 6, 2012 meeting, wherein the resolution was amended.
¶ 23. With respect to the new evidence regarding private easements that the residents provided to the Board, the bill of exceptions reflected that a public easement existed for over eighty-five years.[7] The bill of exceptions also reflected a deed dated December 9, 1881, conveyed from John Nelson, et al. to C & G Railroad’s predecessor in title. The deed required the predecessor railroad to maintain three public crossings for the benefit of the landowners, and the bill of exceptions provided that C & G Railroad was bound by the deed’s terms. Thus, the factual statements contained within the October 31, 2011 resolution conflicted with the evidence regarding these easements.
¶ 24. The procedural history of the Board’s resolution reflects a proper procedural posture for the February 6, 2012 amendment of the resolution. See Miss. Code Ann. § 19-3-40. As reflected by the bill of exceptions, at the Board’s September 15, 2011 meeting, C & G Railroad, while requesting to own the easternmost set of railroad tracks, raised a request to the Board to abandon the portion of Co-op Road that crossed the railroad. The Board acted on that request by scheduling a meeting for public input for October 31, 2011. The bill of exceptions further provided that on October 31, 2011, the Board, on its own motion, entered an order to abandon only that portion of Co-Op Road that crossed the two railroads and to also erect barricades across the western side of the railroad’s right-of-way, even though the Board only possessed the right to abandon the road. Without dispute, the record reflects that, prior to enforcing its order, the Board received no information regarding affected public or private easements.
¶ 25. Regarding official decisions of the Board prior to the February 6, 2012 meeting, the bill of exceptions reflected that, at the Board’s November 30, 2011 meeting, the residents filed a timely written motion asking the Board to reconsider the October 31, 2011 resolution. Then, at a hearing held December 5, 2011, the Board withheld voting on the residents’ motion to reconsider and instead directed the residents to pursue meetings with the railroad. After negotiations with the railroad collapsed, the residents returned to the Board and filed an amended motion to reconsider. The residents then filed a second amended motion, and as reflected by the February 6, 2012 meeting agenda and the record, the Board considered the motion.
¶ 26. At the February 6, 2012 meeting, the supervisors entertained the motion to *1098 reconsider, and also at this meeting, Supervisor Brooks moved to reconsider and amend the resolution. As stated, the Board granted the motion to reconsider, and upon reconsidering the prior order, the Board considered the new information regarding the easement rights of the residents and private-property owners. Based on the new information concerning the pri- or order’s adverse impact on private easements, the Board issued a decision to amend its prior resolution’s factual findings. In so doing, the Board rendered an appealable decision. See Miss.Code Ann. § 11-51-75. I would therefore consider the merits of the circuit court’s decision and affirm. Accordingly, I respectfully dissent from the majority’s opinion.

. Compare Perkins v. Perkins, 787 So.2d 1256, 1261 (¶ 9) (Miss.2001) (explaining that an appeal from the denial of a Mississippi Rule of Civil Procedure 59 motion to reconsider en-' compasses both the denial of the reconsideration and the merits of the entire underlying proceeding and judgment), with Campbell v. State, 126 So.3d 61, 63-64 (¶ 4) (Miss.Ct.App.2013) (explaining that an appeal from the denial of a Mississippi Rule of Civil Procedure 60(b) motion to reconsider encompasses only the denial of the reconsideration and not the underlying judgment).

. See S. Cent. Turf Inc. v. City of Jackson, 526 So.2d 558, 561 (Miss.1988) (finding that the city counsel’s decision, while not a formal judgment, could be appealed because Mississippi case law recognizes "actions” of counties and municipalities as appealable events).

. See S. Cent. Turf, Inc., 526 So.2d at 561.

. From the east side of Highway 12, the easement crossed two railroad tracks, turned due north within the railroad’s right-of-way line, and then went north until it joined Bethel Road on the east side of the two railroad tracks. Bethel Road then continued westward to the east line of Highway 12 to form a closed-loop public easement. The bill of exceptions provided that, for over eighty-five years, the easement had been maintained for the use and benefit of all the people, including the residents, living on the east side of the railroad tracks to get to their land.